IN RE APPLICATION, TWIN LOUPS RECLAMATION DISTRICT, APPELLEE, V. ALFRED WELSH BLESSING ET AL., INDIVIDUALLY AND AS REPRESENTATIVES OF THEIR RESPECTIVE CLASSES, APPELLANTS.
IN RE APPLICATION, TWIN LOUPS IRRIGATION DISTRICT, APPELLEE, V. ALFRED WELSH BLESSING ET AL., INDIVIDUALLY AND AS REPRESENTATIVES OF THEIR RESPECTIVE CLASSES, APPELLANTS.
IN RE PETITION FOR WATER SERVICE CONTRACT, BEFORE THE BOARD OF DIRECTORS OF THE TWIN LOUPS RECLAMATION DISTRICT, ET AL., APPELLEES, V. ALFRED WELSH BLESSING ET AL., APPELLANTS.

276 N. W. 2d 185

Filed March 13, 1979. Nos. 41692, 41693, 41778.

514

Virgil J. Haggart, Jr., and William Geo. Dittrick of Baird, Holm, McEachen, Pedersen, Hamann & Haggart, for appellants.

Lyle E. Strom and William J. Riley of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, and Cyril P. Shaughnessy of Shaughnessy, Shaughnessy & Shaughnessy, for appellees.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, and WHITE, JJ., and RONIN and RIST, District Judges.

WHITE, J.

This is a consolidated action involving two subdivisions of the state, the Twin Loups Reclamation District and the Twin Loups Irrigation District. The other parties are certain residents of the Irrigation and Reclamation Districts. The Irrigation and Reclamation. Districts are authorized and operating under the provisions of Chapter 46 of the Reissue Revised Statutes of Nebraska, 1943.

The districts were organized to further a plan to irrigate land in portions of Valley, Greeley, Howard, Merrick, and Nance Counties. At trial, the validity of the organization of the districts was questioned. The trial court found the districts to be legally organized and that finding is not questioned here.

The first case, No. 41692, involves a special statutory procedure by the Reclamation District authorized by section 46-568, R. R. S. 1943, for the purpose of "praying a judicial examination and determination of any * * * contract of the district * * *."

On June 4, 1976, the Reclamation District entered into a contract with the United States Bureau of Reclamation. The contract generally covers payment of a portion of the water supply works to be constructed which includes the Calamus Dam, the Davis Creek Dam and Reservoir, the Kent Diversion Works, the Kent Canal, first section of the Mirdan Canal, and various works related to those projects.

The Reclamation District's obligation is to begin payments when water becomes available and to continue payments over a period of 50 years. The total expected to be repaid is $16,790,400, if the entire approximately 53,000 acres in the Irrigation District are afforded water. In addition, the district is obligated to pay annually the operating and maintenance expenses of the system.

The trial court held the contract valid, and this appeal resulted.

Appellants first assert that the trial court erred in refusing to pass on the feasibility of the project. We agree with the trial court. The Legislature clearly authorized the courts to pass on the validity of contracts of the district. It did not, and possibly could not, delegate to the courts the authority to pass on the wisdom of the projects themselves. Reclamation districts are "political corporate quasi-municipal subdivisions of the state." Nebraska Mid-State Reclamation District v. Hall County, 152 Neb. 410, 41 N. W. 2d 397. There can be little doubt that in determining to enter into a contract, the district was acting in a legislative capacity. It is not the function of the court to act as a super-legislature, and that power cannot be delegated to us. The appellants' first assignment is without merit.

Next, and related to the first assignment, is the assertion that the trial court failed to consider whether there was an adequate water supply for the project. Appellants assert that no application was at the time of trial on file with the Director of Water Resources

for an allocation of water from the North Loup River. The presence or absence of an adequate water supply is a substantial factor to be considered by the directors in the exercise of their delegated legislative powers. For reasons stated above, the argument is rejected.

The appellants next assert that the Reclamation District exceeded its statutory authority in entering into the contract with the Bureau of Reclamation. Specifically, the appellants assert that section 46-564, R. R. S. 1943, requires the contract to be submitted to the electors of the district. Section 46-564, R. R. S. 1943, provides in part: "Whenever the board incorporated under sections 46-501 to 46-573 shall, by resolution adopted by a majority of the said board, determine that the interests of said district and the public interest or necessity demand the acquisition, construction or completion of any source of water supply, water works, or other improvements or facilities, or the making of any contract with the United States or other persons or corporations, to carry out the objects or purposes of said district, wherein the indebtedness or obligation shall be created, to satisfy which shall require a greater expenditure than the ordinary annual income and revenue of the district shall permit, the board shall order the submission of the proposition of incurring such *obligation or bonded or other indebtedness* for the purposes set forth in said resolution, to the qualified electors of the district at an election held for that purpose." (Emphasis supplied.)

The section is titled "Bonded indebtedness; submission to qualified electors; election." The appellees first contend that it is therefore inapplicable since no bonded indebtedness is proposed here. However, the section clearly is broader than that. Section heads, supplied in compilation, as this one was, do not constitute any part of the law. § 49-802 (8), R. R. S. 1943.

Under the contract, the Reclamation District agrees to pay for delivery of a supply of water. The "Water Service Charge" to the Reclamation District is to be determined with reference to two components: (1) The "O & M component" consisting of the entire annual cost of operation and maintenance of the system, and (2) the "Construction Component" which "shall be applied toward the return to the United States of the cost of construction of the water supply works * * *." This construction component is specified in the contract as $4.95 per irrigable acre but is subject to renegotiation depending on ultimate construction costs. Thus, the annual charge is essentially unrelated to the amount of water used. The charge is fixed in the sense that a reduction in the amount of water actually used will not result in a reduction of the charge.

The Reclamation District would meet this annual water service charge by tolls, most notably under its water service contract with the Irrigation District, and by special assessments on irrigable land in the district, and by a tax levied on all tangible property located in the district pursuant to statutory authority. The district argues that section 46-564, R. R. S. 1943, does not apply because the contract does not create a present "debt" and because the water service charge will be met out of "ordinary annual income and revenue of the District."

Although section 46-564, R. R. S. 1943, is in form a limitation on indebtedness, it has, as a clear objective, the limitation of taxes. Its intention is to prevent the board of directors, without voter approval, from incurring obligations payable in a future year while leaving it to future boards to find the money to pay for them. The applicability in the present situation is obvious. Although the district correctly points out that the annual amount actually paid under the contract will depend upon the number of irrigable acres within the district which are capable

of being served by the project, that number is essentially beyond the control of the district for 40 years after the United States undertakes performance. If the entire 53,000 irrigable-acres goal is achieved, annual payments by the Reclamation District will be in excess of $200,000. The amount will be less than that if fewer acres are capable of being served, but appellees do not seriously contend that the obligation will be less than the district's current annual income, which is about $20,000. According to the contract, the district will be required to levy all "assessments, tolls, and obligations" and use "all of the authority and resources" necessary to meet the contract obligations. In addition, the district agrees to assess annually the maximum ad valorem property tax permitted by law. Contrast this with the long-term lease arrangement recently challenged under Nebraska's constitutional limitation on state debt. See Ruge v. State, 201 Neb. 391, 267 N. W. 2d 748. There, this court recognized that the lease agreement of the proposed State Downtown Education Center and Office Building resembled in some respects a long-term purchase obligation. However, the lease and the state's payment obligations could be terminated by the Legislature's refusal of an appropriation for the lease payment in any future year. No similar prerogative is vested in the Reclamation District under this contract. The contract clearly creates the type of obligation which section 46-564, R. R. S. 1943, prohibits absent voter approval. For that reason, the portion of the trial court's order affirming the contract is reversed.

The appellants finally assert that the trial court erred in holding the appellants could not appear as the representatives of a class and in refusing to grant an attorney's fee. We will consider this argument in the last section of this opinion as it is common to all the actions.

In case No. 41693, the board of directors of the Ir-

rigation District sought a judicial examination and approval of its contract with the United States "* * * for operation and maintenance of a distribution system." The judicial procedure is authorized by section 46-1,151, R. R. S. 1943.

The contract is in some respects similar in construction to that discussed above in connection with case No. 41692. The United States agrees to construct "Distribution Works," including canals, laterals, and drains. In return, the Irrigation District essentially agrees to pay a "Construction Charge Obligation" of $10,494,000 over a 40-year period.

The appellants contend that the Irrigation District is without authority to undertake such an obligation without prior approval by the voters in the district. However, the appellants are unable to cite authority for the proposition that such an election is required. Section 46-156 (1), R. R. S. 1943, provides that: "The board of directors, or other officers of the (Irrigation) district, shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of sections 46-101 to 46-1,111 * * *." However, section 46-126, R. R. S. 1943, expressly authorizes the board to "* * * enter into any obligation or contract with the United States for the construction, operation, and maintenance of the necessary works for the delivery and distribution of water * * *." The contract under consideration is such a contract.

Sections 46-1,143 and 46-1,145, R. R. S. 1943, require an election to authorize a long-term supply of water. The contract between the Irrigation District and the United States was not for a supply of water but for the construction of works. The district proposes to get its water supply from the Reclamation District under an agreement which will be discussed below. Contrast that situation with the one considered in Frenchman Valley Irr. Dist. v. Smith, 167 Neb. 78, 91 N. W. 2d 415, cited by appellants. In that

case, the United States agreed not only to undertake construction but also to deliver up to 20,000-acre feet of water. For that reason the contract fell within the purview of the statutory requirement for voter approval of water supply contracts.

The appellants point out that there is no reason for the Legislature to require voter approval of a contract for water supply but not of a contract for construction. The long-term financial obligations of the district in either situation are very similar. Voter approval of a construction plan is expressly required only if the project is to be financed by bonds. § 46-194, R. R. S. 1943. The appellants argue convincingly that the original irrigation laws anticipated that financing would always be through issuance of bonds, that other financing procedures were introduced into the statutes in a piecemeal manner to take advantage of new federal reclamation programs, and that any omission of voter approval provisions to correspond with these new procedures was inadvertent. But an inadvertent omission by the Legislature is nonetheless an omission. This court will not restrict the statutory authority of the Irrigation District where the Legislature imposed no such limitation.

While the court was thus correct in holding that the Irrigation District had authority to contract with the United States, it was in error in holding that the Irrigation District's contract with the Reclamation District was not a matter for voter approval. Article 2 of the contract between the Irrigation District and the United States provides that: "The obligations of the United States under this contract shall be contingent upon the District making an appropriate water service contract, satisfactory to the Secretary, with the Reclamation District for water service to the District." The contract entered into to satisfy that condition precedent was in the form of an order by the board of directors of the Reclama-

tion District granting the Irrigation District's petition for a water supply. Under the contract, the Irrigation District obligates itself to pay annually a fixed amount to be determined with reference to the number of irrigable acres within the district which are capable of being served by the project. The term of the contract is 50 years. As in the contract between the Reclamation District and the United States, the obligation of the Irrigation District to the Reclamation District is not reduced by the use of less water than anticipated. The payments are for a right to a supply of water. Section 46-1,143, R. R. S. 1943, provides in part: "The board of directors of any irrigation district organized under the laws of this state may enter into contracts for a supply of water for the irrigation of the lands within such irrigation district with any person, firm, association, corporation or the United States of America * * *."

Section 46-1,145, R. R. S. 1943, provides in part: "If such contract provides for payments to be made extending for a period of more than one year from the date of making the contract, the board of directors of such irrigation district shall submit the contract to the legal voters of the district at any general election, or at a special election called therefor for the approval or disapproval of the contract. * * *"

The contract between the Irrigation District and the Reclamation District was clearly a contract "for a supply of water" providing for "payments to be made extending for a period of more than one year." Unless this court accepts the construction of the statute adopted by the federal court in Bridgeport Irr. Dist. v. United States, 40 F. 2d 827 (8th Cir., 1930), the board of the Irrigation District is without authority to enter into such a contract without prior approval of the voters of the district.

In that case, the United States sued for the balance due on a contract for supply of water. The answer of the district admitted execution of the con-

tract by the directors, but alleged that they were without authority to do so and that the contract was therefore void. This position was based on the failure of the board to submit the contract to the voters as was apparently required by what is now section 46-1,145, R. R. S. 1943, quoted above. That section was added to the irrigation laws in 1915. The federal court found the section did not operate to void the contract, relying on the "savings clause" of the 1915 act which provided that: "This act shall not limit the rights which any irrigation district has under the existing laws to purchase a water supply and shall be cumulative thereto." (Subsequent to the Bridgeport decision, the savings clause became section 46-205, Compiled Statutes of Nebraska, 1929, and was entirely omitted, without comment, when the statutes were revised in 1943. We place no reliance, one way or the other, on this omission.)

In basing its decision on the savings clause, the court noted that to hold the act amendatory of pre-existing law would require the law be declared unconstitutional as violative of Article III, section 14, Constitution of Nebraska, because the act did not contain a reference to the sections amended. It concluded that the election requirements must have been meant to apply only "under special circumstances not present in this case." For reasons which follow, we decline to accept this restrictive construction of the section.

Since the passage of the 1915 amendments, the Nebraska Legislature in 1943 adopted a general revision of the statutes under the title Revised Statutes of Nebraska 1943. § 49-601, R. R. S. 1943. We have previously held that the 1943 revision had the effect of removing any constitutional objection, under Article III, section 14, Constitution of Nebraska, for lack of proper title to previously enacted legislation. See, Peterson v. Vasak, 162 Neb. 498, 76 N. W. 2d 420; McGraw Electric Co. v. Lewis & Smith Drug

Co., Inc., 159 Neb. 703, 68 N. W. 2d 608. The reasoning is equally applicable here. The purpose of the enactment of the 1943 revision, in addition to the elimination of obsolete and redundant sections of the statutes, was to clearly set out, as if in a completely new act, the law applicable to an area of legislative concern. Little purpose would attach to a revision whose provisions would carry with them the unintentional limitations of their legislative birth, no matter how long ago that event had passed. We hold that the objectionable infirmities of statutory provisions enacted prior to 1943, based on the provisions of Article III, section 14, Constitution of Nebraska, which provides "* * * no law shall be amended unless the new act contain the section or sections as amended * * *," are cured by the 1943 revision of the statutes.

The contract in question, being clearly in violation of the law requiring a prior election, is void. The trial court is reversed.

The third case is an action by certain residents of the Irrigation District questioning the authority of the Irrigation District to contract for a water supply with the Reclamation District. The case was tried last and the trial court sustained the demurrer to the petition on the basis of its decision in the second case. As discussed above, the court was in error and the decision is reversed.

In the final assignment of error, the opponents of the Irrigation and Reclamation Districts assign as error the trial court's dismissal of their petition as a class action. We affirm.

Nebraska has no provision similar to the Federal Rules of Civil Procedure rule 23 (A) and (B) authorizing a class-certifying hearing in the trial court. In this state, the petition for class status may be challenged by a motion for summary judgment as in Blankenship v. Omaha P. P. Dist., 195 Neb. 170, 237 N. W. 2d 86, or by demurrer. See 10 Creighton L.

Rev. 11, p. 18. In either case, if, on examination of the petition or the motion and supporting evidence, it appears that "* * * any party in the class stands to suffer a long run loss as a result of his inclusion in the class, the representative party will have a conflict of interest with the other class members." See 56 Neb. L. Rev. 338. In that case, class status will be denied. See Blankenship v. Omaha P. P. Dist., *supra*.

The class purportedly represented by the appellants is: "* * * those individuals owning land in the Irrigation District and/or the Reclamation District, and those persons interested in the contract executed on June 4, 1976, between the United States of America, Bureau of Reclamation and the Twin Loups Irrigation District." However, included among the individuals owning land in the district are those who petitioned to be included in the districts and must be thought to favor the undertaking of such a project. In fact, the stated class includes the very directors whose acts are challenged here. A real and substantial conflict is apparent within the stated class. The District Court was correct in denying representative status to the appellants.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.