WILLIAM FISHER, JR., ET AL., APPELLEES, V. LOWER
PLATTE NORTH NATURAL RESOURCES DISTRICT,
APPELLANT.
IN RE APPEAL OF TROUBLE CREEK/RAWHIDE
WATERSHEDS, INC.
TROUBLE CREEK/RAWHIDE WATERSHEDS, INC., ET AL.,
APPELLEES, V. LOWER PLATTE NORTH NATURAL
RESOURCES DISTRICT, APPELLANT.

322 N.W.2d 403

Filed July 16, 1982. Nos. 81-710, 81-711.

George E. Svoboda, P.C., of Sidner, Svoboda, Schilke, Wiseman & Thomsen, for appellant.

Edward F. Fogarty of Fogarty, Lund & Gross, for appellees Fisher et al.

David J. Cullan of Cullan, Cullan & Morrison, for appellees Trouble Creek et al.

Paul L. Douglas, Attorney General, and G. Roderick Anderson, and James R. Cook, for amicus curiae Natural Resources Commission.

Robert B. Crosby and Steven G. Seglin of Crosby, Guenzel, Davis, Kessner & Kuester, for amicus curiae Neb. Assn. of Natural Resources Districts.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

McCown, J.

This appeal involves two cases which were consolidated for trial in the District Court, both of which are appeals from an order of the Lower Platte North Natural Resources District dated March 6, 1980, which denied a petition of William Fisher, Jr., and 15 other landowners of the district to create a flood control project as a special assessment improvement project. See Neb. Rev. Stat. § 2-3255 (Reissue 1977). The denial was based on the ground that the same flood control project requested by the Fisher petition had already been approved and adopted by the district as a general benefit project and was in the process of implementation. The District Court entered summary judgment for the plaintiffs in both cases and the district has appealed.

The district is a natural resources district organized and existing under the laws of Nebraska. The flood control project involved is generally known as the Rawhide project and is located in the Rawhide Creek watershed in Dodge County, Nebraska, north and west of the city of Fremont.

The district conducted preliminary studies on the flood control project in 1973 and 1974. After notice to landowners, the district applied to the Nebraska Natural Resources Commission for funding for the project. After hearing before the commission, at which both proponents and objectors appeared, the project was approved by the commission and the application of the district was granted on June 7, 1978. The formal agreement between the commission and the district was signed and became effective on October 10, 1978. The current funding agreement recites that the Natural Resources Commission has determined that the costs were eligible for state current funding under the appropriate statutes as a general benefit flood control project. The board of directors of the district proceeded to discuss implementation of the project at various meetings there-

after, and various landowners and their counsel appeared at the meetings and were given an opportunity to state and express their objections. The board of directors of the district proceeded with the implementation of the project.

In August 1979 William Fisher, Jr., and 15 other landowners filed a petition with the district pursuant to Neb. Rev. Stat. §§ 2-3252 et seq. (Reissue 1977) to grant a special assessment improvement project area. The project requested by the petition was the identical flood control project already being implemented as a general benefit project of the district. The Fisher petition asserted that the project was in compliance with the goals of the state water plan but requested that it be funded by a special assessment to the landowners within the project area. Trouble Creek/Rawhide Watersheds, Inc., an organization of landowners opposed to the flood control project, filed an objection to the Fisher petition.

The district held hearings on the Fisher petition on September 28, 1979, November 27, 1979, and January 10, 1980, and notice was published of the estimated assessment to landowners. The landowners who had filed the Fisher petition produced no evidence in support of their petition and, at the first hearing on September 28, 1979, advised the board of directors that they would not offer proof in support of their petition and that they joined the objectors to the petition. Some persons appeared at the hearings in favor of the project on a general benefit basis and some objecting landowners, including Trouble Creek/Rawhide Watersheds, Inc., presented objections to the entire flood control project, including challenging the legality of the approval and implementation of the general benefit project.

On March 6, 1980, the district found that the special benefit project requested in the Fisher petition was physically the same project which the district had in process, which project had been approved

and adopted by the district as a general benefit project which had the approval of the Nebraska Natural Resources Commission and other state agencies, and also had approval of appropriate federal agencies. The district also found that the general benefit project conformed with the goals, criteria, and policies of the state water plan and the requirements of the statutes of Nebraska. The district then denied the establishment of the improvement project area requested by the petitioners.

The Fisher landowners appealed from the order of March 6, 1980. Trouble Creek/Rawhide Watersheds, Inc., also appealed, challenging the overruling of certain motions based on its allegations of illegality in the creation of the general benefit project by the district. The cases were consolidated in the District Court for trial and have remained consolidated in this appeal.

The District Court, after hearing on motions for summary judgment filed by the landowner groups and the submission of evidence, affidavits, and written briefs, found that the Rawhide flood control project is a general benefit project created by the defendant, Lower Platte North Natural Resources District, within its boundaries under authority and by procedure of the natural resources act. The court also found that the improvement project area proposed by the landowners was a special benefit project upon procedures authorized by the natural resources act, and that neither the Nebraska Natural Resources Commission nor the Lower Platte North Natural Resources District had adopted rules and regulations establishing minimum feasibility standards or minimum due process standards of notice and hearing for the creation of general benefit projects and/or special benefit projects.

The District Court determined that the creation of the general benefit project and denial of the creation of the special benefit project were upon unlawful procedure in violation of the petitioners' constitu-

tional rights of due process, and entered judgment that the orders creating the general benefit project and denying the creation of the special benefit project be set aside and vacated, and that the matters be remanded to the district for further consideration consistent with the judgment of the District Court.

The district contends that its action in establishing and implementing the general benefit flood control project was an exercise of legislative power and authority. It argues that judicial notice and hearing and the establishment of minimum feasibility standards were not required for the establishment or implementation of the general benefit project. The district also contends that the District Court had no jurisdiction because a general benefit flood control project cannot be collaterally attacked by attempting to establish a special assessment improvement project area for carrying out the same project.

Neb. Rev. Stat. § 2-3229 (Reissue 1977) sets out the many purposes of natural resources districts, one of which is to develop and execute plans, facilities, works, and programs relating to flood prevention and control through the exercise of the powers and authority contained in the natural resources act. Under that section plans and programs are to be in conformance with the goals, criteria, and policies of the state water plan as developed by the Nebraska Natural Resources Commission. To insure that those goals are met, the section also provides that a properly designated district planning body for the area affected and the central state planning agency shall each be given 30 days to review and comment upon the plans and programs. Failure to reply within 30 days by either of the planning bodies shall be conclusive that the proposed plans and programs have been endorsed.

Neb. Rev. Stat. §§ 2-3230 to 2-3250 (Reissue 1977) grant to each district power and authority to engage in a broad spectrum of activities in carrying out the purposes of the district.

Section 2-3252 grants to each district the power and authority to establish improvement project areas within the district for the benefit of landowners within such improvement areas. The cost is to be recovered by special assessment under procedures provided in §§ 2-3252 to 2-3254 instead of by general tax funds levied pursuant to other sections. The last sentence of § 2-3252 provides: "Projects of a general benefit to a district may be developed and executed without the establishment of a project improvement area."

Section 2-3266 provides that the Nebraska Natural Resources Commission may allocate funds to agencies or political subdivisions when the program or project appears to be of general public benefit.

The record in this case shows that the Natural Resources Commission, after hearing, determined not only that the flood control project for which the district had applied for funding was in conformance with the goals, criteria, and policies of the state water plan but also that it was of general public benefit and eligible for state grant funding. The record also indicates that partial federal funding was obtained. The record does not reveal the breach of any statutory requirement for establishing, implementing, or funding the general benefit flood control project which the actions here seek to challenge. It must be assumed, in the absence of evidence to the contrary, that the public bodies and agencies involved here have performed their duties as required by law.

The landowners in the present cases overlook the fact that the board of directors of the district, in initiating, adopting, and implementing the general benefit flood control project, was acting in a legislative capacity and in accordance with the statutes setting forth the procedures required to be followed in taking such action. In *Winter v. Lower Elkhorn Nat. Resources Dist.,* 206 Neb. 70, 291 N.W.2d 245 (1980), the contention was made that the project

there involved was not economically feasible, technically feasible, environmentally sound, or in accordance with the Nebraska state water plan. This court said: "In each of these areas, an essentially legislative judgment is to be exercised. No breach of a specific statutory requirement is pointed out to us. The determination is not within the scope of judicial review." *Id.* at 73, 291 N.W.2d at 247.

In *Twin Loups Reclamation & Irr. District v. Blessing,* 202 Neb. 513, 515, 276 N.W.2d 185, 187 (1979), this court said: "The Legislature clearly authorized the courts to pass on the validity of contracts of the district. It did not, and possibly could not, delegate to the courts the authority to pass on the wisdom of the projects themselves. . . . There can be little doubt that in determining to enter into a contract, the district was acting in a legislative capacity. It is not the function of the court to act as a super-legislature, and that power cannot be delegated to us."

In *Stones v. Plattsmouth Airport Authority,* 193 Neb. 552, 228 N.W.2d 129 (1975), which dealt with the selection of a site for an airport, this court held that the selection of a site for a public improvement is an exercise of a power which is legislative in nature, and the requirements of due process that apply to judicial or quasi-judicial proceedings are not applicable.

The determination of the feasibility of a general benefit project by the board of directors of a natural resources district, and the adoption and implementation of such a project, is a legislative function and is not within the scope of judicial review where the specific statutory requirements for such action have been met.

The adoption and implementation of a general benefit project by a natural resources district is an exercise of a power which is legislative in nature, and the requirements of due process that apply to

judicial or quasi-judicial proceedings are not applicable.

The Legislature has granted to natural resources districts broad power and authority to establish general benefit projects within specified statutory limits. Where, as here, a general benefit project has been duly and regularly adopted and implemented by a natural resources district, individual landowners of the district cannot properly file a petition for the adoption of the identical project as an improvement project area to be funded by special assessment. In the case at bar the admissions of the petitioning landowners that they actually were objectors to their own petition demonstrated an abuse of judicial process and constituted a collateral attack on the legislative action of the district in creating the general benefit project.

In view of the foregoing it is unnecessary to discuss the remaining issues raised in the briefs.

The judgment of the District Court in each case is reversed and the causes are remanded to the District Court with instructions to dismiss the actions.

REVERSED AND REMANDED WITH INSTRUCTIONS.