DANIEL HOIENGS, ON BEHALF OF HIMSELF AND ALL OTHER PERSONS
SIMILARLY SITUATED, APPELLANT, V. COUNTY OF ADAMS ET AL.,
APPELLEES.
516 N.W.2d 223

Filed May 13, 1994.    No. S-92-777.

Richard Scott, Bryan R. Watkins, and Mary C. Wickenkamp for appellant.

Vincent Valentino, of Angle, Murphy, Valentino & Campbell, P.C., for appellees County of Adams et al.

Randall L. Goyette and David D. Zwart, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees County of Burt et al.

Daniel E. Klaus, of Rembolt Ludtke Parker & Berger, for appellee County of Seward.

Don Stenberg, Attorney General, and Fredrick F. Neid for appellee Retirement System for Nebraska Counties.

HASTINGS, C.J., BOSLAUGH, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

On his own behalf and on behalf of other current and past participants in the defendant-appellee Retirement System for Nebraska Counties (the system), the original plaintiff-appellant, William Fairbanks, then an employee of the defendant-appellee York County, sought a declaration that the employees of the 91 defendant-appellee counties are

entitled, under the provisions of the County Employees Retirement Act, Neb. Rev. Stat. § 23-2301 et seq. (Reissue 1991) (the retirement act), to greater retirement contributions from their respective employer counties than is presently the case. He also sought, insofar as is relevant to this review, declarations requiring the defendant counties to contribute the difference in the level of contributions actually made and the level of contributions allegedly required under the retirement act and, although not naming it as a defendant, requiring the Public Employees Retirement Board (retirement board), which administers the system, to compel the counties to contribute as required by the retirement act.

The defendants all demurred to the petition on the grounds that (1) the district court lacked jurisdiction over the defendants and the subject matter of the action, (2) there was a defect or misjoinder of the parties, (3) several causes of action were improperly joined, and (4) the petition did not state facts sufficient to constitute a cause of action.

The district court sustained the defendants' demurrers and thereafter dismissed Fairbanks' petition. Assigning, in summary, that ruling as error, he appealed to the Nebraska Court of Appeals. While the appeal was pending in that court, York County terminated Fairbanks' employment, and Fairbanks withdrew all his retirement funds. The Court of Appeals thereafter, upon Fairbanks' motion, granted leave to substitute Daniel Hoiengs, an employee of the defendant Cass County, as the plaintiff-appellant.

We subsequently, under the authority granted by Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 1992), removed the matter to this court in order to regulate the caseloads of the appellate courts. We now reverse, and remand for further proceedings consistent with this opinion.

## II. SCOPE OF REVIEW

We begin our review by recalling that the use and determination of a demurrer in actions for declaratory judgment are controlled by the same principles as apply in other cases. *S.I.D. No. 272 v. Marquardt*, 233 Neb. 39, 443 N.W.2d 877 (1989).

In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *DeVaux v. DeVaux, ante* p. 611, 514 N.W.2d 640 (1994); *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993); *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. 715, 508 N.W.2d 907 (1993).

A statement of facts sufficient to constitute a cause of action means a narrative of the events, acts, and things done or omitted which shows a legal liability of the defendant to the plaintiff. *Wheeler, supra; Schieffer, supra.*

In ruling on a demurrer, the petition is to be construed liberally; if as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action is to be overruled. See, *Wheeler, supra; St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993).

### III. RETIREMENT ACT

The next task is to familiarize ourselves with the retirement act, a necessary step to the understanding of the petition and issues presented by the challenge to the district court's ruling.

The retirement act establishes the system for the purpose of providing a retirement annuity or other benefits for employees of counties having a population of less than 100,000.

The participation of the counties became mandatory effective upon the earlier adoption of the system by the county board or January 1, 1987. § 23-2329. The system includes all county employees devoting 20 or more hours per week to county employment and all elected officers of a county with the exception of judges and persons making contributions to the School Retirement System of the State of Nebraska. § 23-2301(1). The membership of the system is composed of all full-time employees who have been employees for a period of 12 continuous months and part-time employees who are at least 25 years of age, have been employed for a total of 12 months, and have exercised their option to join the retirement system.

§ 23-2306.

The share of the fund created by deductions from an employee's salary is defined as that person's "employee account" and constitutes half of the employee's source of retirement benefits. § 23-2309. Beginning January 1, 1985, 3.2 percent of each participating employee's monthly salary is "picked up" by the county either through a reduction in the cash compensation of the employee or a combination of a reduction in compensation and an offset against a future compensation increase. § 23-2307. These contributions are paid from the same fund source used to pay earnings to the employee. *Id.*

An amount equal to 250 percent of the amounts deducted from the employee's compensation is paid by the county to the primary carrier, § 23-2308, a life insurance or trust company designated by the board as administrator of the system, § 23-2301(12).

The "employer account," which is a member's share of the fund created by county contributions, makes up the second half of the source of an employee's retirement benefits. § 23-2310. The amount of the county's contributions is set out in § 23-2310:

Prior to January 1, 1981, as of any January 1 a member's employer account shall be equal to his or her account as of the next preceding January 1, increased by two hundred percent of any amounts deducted from the member's compensation since the next preceding January 1 in accordance with section 23-2307. As of January 1, 1982, a member's employer account shall be equal to the account as of January 1, 1981, increased by two hundred percent of the amounts deducted from the member's compensation for the first nine months of the year and two hundred fifty percent for the final three months of the year in accordance with section 23-2307. As of January 1, 1983, and each year thereafter, the member's employer account shall be equal to the account as of the next preceding January 1 increased by two hundred fifty percent of the amounts deducted from the member's compensation since the next preceding January 1 in

accordance with section 23-2307. . . .

. . . [T]he total additions made to both the employee account and the employer account for any calendar year shall not exceed the lesser of thirty thousand dollars, as adjusted for cost-of-living adjustments announced by the Internal Revenue Service for each calendar year in which the adjustment is announced, or twenty-five percent of the member's compensation for such year. For purposes of this subsection, total additions for a calendar year shall equal the full amount allocated to the employer account for that year plus the lesser of (a) one-half of the member's contributions for that year or (b) the amount of the member's contributions in excess of six percent of his or her compensation for that year.

The retirement value for any employee who retires after attaining the age of 55 or because of disability is the sum of that person's employee account and employer account as of the person's retirement date. §§ 23-2315, 23-2315.01, and 23-2316. An employee who terminates employment prior to age 55 may, upon application, receive either a termination benefit not to exceed the amount of his or her employee account payable in a lump sum, plus a paid-up deferred annuity provided by the vested portion of the employer account, or a paid-up deferred annuity provided by the employee account and the vested portion of the employer account. The employer account fully vests in the employee after the latter's participation for a period of 5 years. Sums remaining in employer accounts not collected by employees who have ended their employment before becoming eligible for retirement are used to meet the expenses incurred by the retirement board in connection with operating the system and to reduce the contributions of the counties to fund future benefits under the retirement act. § 23-2319.

## IV. FACTUAL ALLEGATIONS

The operative petition asserts that since January 1, 1983, the defendant counties have failed to make payments to the employer accounts on behalf of employees consistent with the retirement act. Instead, according to the petition, the counties have contributed an amount equal to 150 percent of the amount

contributed by the employee, and not the required 250 percent. The petition further claims that the system has failed to administer and collect payments by the counties as the retirement act requires.

## V. SUBSTITUTION OF PLAINTIFF

Before proceeding to an analysis of the issues raised by the appeal from the district court's sustainment of the defendants' demurrers and dismissal of the petition, we turn our attention to the defendants' claim that as Fairbanks' employment with one of the defendant counties has terminated, he is not a proper person to bring this suit. However, inasmuch as Fairbanks is no longer the plaintiff, we need not, and therefore do not, concern ourselves with whether he could have maintained this suit notwithstanding the termination of his employment. Rather, we go to the issue of whether it was proper to permit the substitution of another plaintiff.

The propriety of substituting parties depends on whether the cause of action otherwise remains the same. Thus, where such substitution will introduce a new cause of action into the case, the substitution will not be allowed. See, *West Town Homeowners Assn. v. Schneider*, 215 Neb. 905, 341 N.W.2d 588 (1983); *Collection Associates, Inc. v. Eckel*, 212 Neb. 607, 324 N.W.2d 808 (1982); *Meyer v. Sandhills Beef, Inc.*, 211 Neb. 388, 318 N.W.2d 863 (1982).

In determining whether a new cause of action results from the substitution of parties, the test is whether an attempt is made to state facts giving rise to a wholly distinct and different legal obligation against the defendant, or to change the liability sought to be enforced. See, *Klopstock v. Superior Court*, 17 Cal. 2d 13, 108 P.2d 906 (1941); *Oetzel v. Martin*, 163 Ohio St. 512, 127 N.E.2d 353 (1955) (two tests to be applied: whether same evidence will support both petitions and whether same measure of damages will apply to both). See, also, *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993) (cause of action consists of facts which give right to judicial relief against another).

Additionally, in order to substitute one party for another, the party substituted must bear some relation to the original party

or possess an interest in the controversy sufficient to enable that party to maintain the proceeding. See *Nelson v. Sing Oil Co.*, 122 Ga. App. 19, 176 S.E.2d 227 (1970) (substitution of party not authorized by statute providing for adding or disposing of parties).

Where rules of practice governing amendments to pleadings permit the adding or striking out of the name of any party, such amendments have been held to permit the court, in its discretion, to allow the substitution of a new plaintiff for the original plaintiff. See, *Harmelink v. Arvada*, 41 Colo. App. 122, 580 P.2d 841 (1978); *Oetzel v. Martin, supra*; *Pearlman v. Rowell*, 121 R.I. 466, 401 A.2d 19 (1979); *Superscope, Inc. v. Benjamin Co., Inc.*, 276 S.C. 231, 277 S.E.2d 596 (1981); *Jacobson v. Southern Biscuit Co.*, 198 Va. 813, 97 S.E.2d 1 (1957). In our practice, under Neb. Rev. Stat. § 25-852 (Reissue 1989), "[t]he court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party . . . ." The decision whether to allow or deny an amendment lies within the discretion of the court to which application is made. *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983); *Tilden v. Beckmann*, 203 Neb. 293, 278 N.W.2d 581 (1979); *McCarty v. Morrow*, 173 Neb. 643, 114 N.W.2d 512 (1962). However, the statute is to be liberally construed and amendments permitted when proposed at an opportune time in the furtherance of justice. *Bittner v. Miller*, 226 Neb. 206, 410 N.W.2d 478 (1987); *Building Systems, Inc. v. Medical Center, Ltd.*, 213 Neb. 49, 327 N.W.2d 95 (1982); *Kleinknecht v. McNulty*, 169 Neb. 470, 100 N.W.2d 77 (1959) (it is abuse of discretion to refuse to permit amendment proposed at opportune time in furtherance of justice). Thus, we have held that amendments under this statute may even be made in this court after appeal. *Lippire v. Eckel*, 178 Neb. 643, 134 N.W.2d 802 (1965).

Here, Fairbanks sought to substitute one employee of the defendant counties for another. No other change was sought or made, and the newly named plaintiff bears the same relationship to the dispute as did his predecessor.

Under the circumstances, it cannot be said that the Court of

Appeals abused its discretion in permitting Hoiengs to be substituted as the plaintiff.

## VI. ANALYSIS OF ISSUES PRESENTED BY DISTRICT COURT'S RULING

That determination having been made, we consider the issues presented by the challenge to the district court's ruling.

### 1. CLAIMED LACK OF JURISDICTION

We turn first to the defendants' contention that the district court lacked jurisdiction over their persons and the subject matter of the action.

### (a) Over Persons

The defendants first argue that the district court could acquire no jurisdiction over them as they are immune from suit because of their sovereign nature.

For purposes of applying the doctrine of sovereign immunity, a suit against an agency of the state is the same as a suit against the state. *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 505 N.W.2d 654 (1993); *Anstine v. State*, 137 Neb. 148, 288 N.W. 525 (1939), *overruled on other grounds, Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985). The retirement act provides that the system holds all cash and other property. § 23-2302. The system possesses the powers and privileges of a corporation, and the Attorney General is specifically designated as its legal adviser. § 23-2314. The close relationship between the system and the State is apparent through the legislative provisions which create and govern all of Nebraska's retirement systems. The retirement board responsible for administration of the system is also charged with responsibility of the State Employees Retirement Act, the School Retirement System, and the Nebraska State Patrol Retirement System. Neb. Rev. Stat. §§ 79-1503 (Reissue 1987) and 81-2019 and 84-1305 (Cum. Supp. 1992). The Auditor of Public Accounts is responsible for making an annual audit of the system and an annual report concerning the condition of the system to the retirement board and to the Clerk of the Legislature. § 23-2313. The Legislature appoints five members of the Legislature to serve on a

committee known as the Nebraska Retirement Systems Committee for the purpose of studying any legislative proposal, bill, or amendment affecting any public retirement system established by the State of Nebraska or any political subdivision thereof. Neb. Rev. Stat. §§ 50-416.01 and 50-417 (Cum. Supp. 1992).

Thus, little argument is required to demonstrate that the system is clothed with the sovereign immunity of the state. Indeed, Hoiengs' brief presents no direct challenge to the system's status as a state agency.

Likewise, unless authorized by statute, neither may a county be sued, for a county is a political subdivision of the state having subordinate powers of sovereignty conferred by the Legislature. *Franek v. Butler County*, 127 Neb. 852, 257 N.W. 235 (1934). As such, it acts purely as an agent of the state. *Rock Cty. v. Spire*, 235 Neb. 434, 455 N.W.2d 763 (1990); *Seward County Board of Commissioners v. City of Seward*, 196 Neb. 266, 242 N.W.2d 849 (1976); *State ex rel. Johnson v. County of Gage*, 154 Neb. 822, 49 N.W.2d 672 (1951). See *Stevenson v. Richardson County, Nebraska*, 9 F.R.D. 437 (D. Neb. 1949) (county is not by its nature corporate entity, but, rather, instrumentality erected by State whereby it administers its sovereign authority).

Having concluded that the system and the counties have sovereign immunity, the question becomes one of determining whether that immunity has been waived.

### (i) System

Neb. Const. art. V, § 22, provides that the "state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." While the provision is not self-executing, it permits the state to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe. *Gentry v. State*, 174 Neb. 515, 118 N.W.2d 643 (1962); *Anstine, supra*.

However, statutes authorizing suits against the state are to be strictly construed because such statutes are in derogation of the state's sovereign immunity. *Riley v. State*, 244 Neb. 250, 506 N.W.2d 45 (1993); *Concerned Citizens, supra; First Nat. Bank*

*of Omaha v. State,* 230 Neb. 259, 430 N.W.2d 893 (1988); *Wiseman v. Keller,* 218 Neb. 717, 358 N.W.2d 768 (1984); *Frye v. Sibbitt,* 145 Neb. 600, 17 N.W.2d 617 (1945). Waiver of sovereign immunity will only be found where stated " ' "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." ' " *Wiseman,* 218 Neb. at 720, 358 N.W.2d at 770.

As noted in part I, this is a declaratory judgment action brought pursuant to Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1989). Although the system argues that it is not a person as defined in the declaratory judgment statutes, we have previously held that the term "person," as used in those statutes, is broad enough to include the state or any subdivision thereof. *City of Lincoln v. First Nat. Bank,* 146 Neb. 221, 19 N.W.2d 156 (1945); *State, ex rel. Smrha, v. General American Life Ins. Co.,* 132 Neb. 520, 272 N.W. 555 (1937) (State embraced under expression "any person").

While the declaratory judgment statutes do not waive the state's sovereign immunity, *Concerned Citizens v. Department of Environ. Contr.,* 244 Neb. 152, 505 N.W.2d 654 (1993), such an action may be maintained under various other statutes permitting actions against the state, *Riley, supra; Concerned Citizens, supra; Offutt Housing Co. v. County of Sarpy,* 160 Neb. 320, 70 N.W.2d 382 (1955), *aff'd* 351 U.S. 253, 76 S. Ct. 814, 100 L. Ed. 1151 (1956).

Just as we must determine the scope of our review in an action for declaratory judgment from the nature of the dispute, *Donaldson v. Farm Bureau Life Ins. Co.,* 232 Neb. 140, 440 N.W.2d 187 (1989), so must we determine whether sovereign immunity lies. Hoiengs' claim arises from his right to retirement benefits by virtue of his employment by a county participating in the system. In *Halpin v. Nebraska State Patrolmen's Retirement System,* 211 Neb. 892, 320 N.W.2d 910 (1982), we found that a change in calculating a state patrolman's pension annuities resulted in an unconstitutional impairment of the patrolman's contract rights. We reasoned that since Nebraska law recognizes that public pensions are deferred compensation, it follows that Nebraska public

employees have reasonable expectations with regard to their pensions rights which are protected by the law of contracts. Significantly, we stated that state retirement systems create contracts between the state and its employees who are members of the system. See, also, *Omer v. Tagg*, 235 Neb. 527, 455 N.W.2d 815 (1990) (promises regarding health insurance made at time of employment involved deferred compensation and constituted contract enforceable against state); *Caruso v. City of Omaha*, 222 Neb. 257, 383 N.W.2d 41 (1986) (accepting that right of public employee to receive benefits under public retirement plan is not gratuity, but, rather, is deferred compensation and is contractual in nature). Hoiengs' retirement rights are therefore contractual in nature.

The Legislature has specifically decreed that the "state may be sued in the district court of the county wherein the capital is situated in any matter founded upon or growing out of a contract, express or implied, originally authorized or subsequently ratified by the Legislature, or founded upon any law of the state." Neb. Rev. Stat. § 25-21,206 (Reissue 1989). Accordingly, the system has waived its sovereign immunity under the provisions of § 25-21,206. See, *Omer, supra*; *VisionQuest, Inc. v. State*, 222 Neb. 228, 383 N.W.2d 22 (1986).

### (ii) Counties

There is authority for the proposition that as counties have no independent sovereignty, any immunity from liability and suit they enjoy is nothing more than an extension of a state's immunity; therefore, any waiver by a state of its own immunity waives the immunity of its counties, even without separate statutory enactments. *Bernardine v. City of New York*, 294 N.Y. 361, 62 N.E.2d 604 (1945); *Cox v. Vil. of Greenwich*, 33 A.D.2d 264, 306 N.Y.S.2d 987 (1970). However, we need not decide that issue at this time, for by providing in Neb. Rev. Stat. § 23-135 (Reissue 1991) that "claims against a county shall be filed with the county clerk within ninety days from the time when any materials or labor, which form the basis of the claims, have been furnished or performed," the Legislature has expressly waived the counties' sovereign immunity with respect to contractual disputes.

## (b) Over Subject Matter

Next, the defendants assert that even so, the district court lacked jurisdiction over the subject matter of this action.

### (i) System

We note first of all that Neb. Rev. Stat. § 81-1170.01 (Cum. Supp. 1992) requires that, with certain exceptions not relevant here, persons having claims against the state shall present the same, with appropriate documentation, to the Director of Administrative Services to be audited and settled within 2 years after the request accrues. In breach of contract actions, such is a mandatory step. *J.L. Healy Constr. Co. v. State*, 236 Neb. 759, 463 N.W.2d 813 (1990). See *Westside Community Schools v. State Department of Education*, 202 Neb. 712, 277 N.W.2d 73 (1979).

In some instances, we have refused to grant declaratory relief and have instead required compliance with claims statutes. E.g., *Millard School Dist. v. State Department of Education*, 202 Neb. 707, 277 N.W.2d 71 (1979); *VisionQuest, Inc., supra.*

In *Millard School Dist.*, after the State Department of Education denied a portion of the local board of education's expenses for special education, the local board filed an action for reimbursement, characterizing its action as one for declaratory judgment. However, noting that declaratory judgment is not appropriate where an equally serviceable remedy exists and pointing out that the dispute essentially presented a claim for money, we held that the statutory claim procedure had to be employed and thus refused declaratory relief. Perhaps even more significantly, we observed that the case did not present the classic declaratory judgment situation wherein one would otherwise be required to act or refrain from acting at one's legal peril, because the local board was required, in any event, to provide special education services to handicapped students; the only question was whether the expenditures of meeting that requirement were reimbursable.

In *VisionQuest, Inc.*, the State, through its Director of Administrative Services, refused to fully reimburse VisionQuest for the cost of its services to two children in need of special educational facilities. VisionQuest filed suit as an appeal

from the director's decision and prayed for the amount owed to it for services rendered and for a declaratory judgment and determination of its rights under the applicable statute. Again, we determined that the petition was simply a claim for money which required VisionQuest to follow the mandatory statutory procedure, which VisionQuest had failed to do in that it had filed its appeal from the director's decision out of time.

But here, the additional contributions would be paid by each county and thus would not be a direct claim upon the treasury of the State. For that reason alone, the State claims procedure is not applicable.

The system argues that nonetheless, as a state agency, a declaratory judgment action against it can only proceed in accordance with the Administrative Procedure Act.

While it is true that the Administrative Procedure Act governs procedures for administrative agencies and provides for judicial review of appeals from the contested rulings of such bodies, the procedures are only applicable to agencies defined in the act as being boards, commissions, departments, officers, divisions, or other administrative offices or units of the state government which are authorized by law to make rules and regulations. See *County of Blaine v. State Board of Equalization & Assessment*, 180 Neb. 471, 143 N.W.2d 880 (1966); Neb. Rev. Stat. §§ 84-901 (Reissue 1987) and 84-917 (Cum. Supp. 1992). Such rules and regulations do not include rules and regulations concerning the internal management of an agency which do not affect private rights, private interests, or procedures available to the public. § 84-901. An administrative agency is a governmental authority, other than a court and other than a legislative body, which affects rights of private parties through either adjudication or rulemaking. *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992). Nowhere does the retirement act grant the system authority to make rules and regulations which would make it subject to the Administrative Procedure Act. See *Reed v. Parratt*, 207 Neb. 796, 301 N.W.2d 343 (1981) (Administrative Procedure Act does not apply to internal operations).

*(ii) Counties*

Recognizing the underlying contractual nature of the claims, the counties, relying on § 23-135, contend that the claims Hoiengs asserts not only on his own behalf but on behalf of others must first have been submitted to each county. We have noted the requirement of § 23-135, that claims based on contract be filed with the county, enables the county to acquire information concerning the rights asserted against it, to make proper investigation concerning the merits of claims against it, and to settle those of merit without the expense of litigation. *Zeller Sand & Gravel v. Butler Co.*, 222 Neb. 847, 388 N.W.2d 62 (1986).

In *Zeller Sand & Gravel*, a sand and gravel firm brought an action against Butler County for breach of a requirements contract. In determining whether § 23-135 was applicable to the contract before the court, we first noted that it has long been held that the statute applies to all claims arising from or out of a contract. See, *Jackson v. County of Douglas*, 223 Neb. 65, 388 N.W.2d 64 (1986) (includes claims for additional wages allegedly due for overtime work); *Coverdale & Colpitts v. Dakota County*, 144 Neb. 166, 12 N.W.2d 764 (1944) (includes all claims arising ex contractu whether express or implied). More significantly, we held in *Zeller Sand & Gravel* that § 23-135 applies where a claim is not a mere formal prerequisite to the issuance of a warrant in payment, but, rather, requires quasi-judicial action in the sense that an exercise of discretion is required in ascertaining or fixing the amount to be allowed, or resolution of the claim otherwise involves a determination of factual questions based upon evidence. See *Jackson, supra* (compliance with county claims statute in cases against county involving claims arising out of contract and containing quasi-judicial questions of fact is mandatory). See, also, *Heinzman v. County of Hall*, 213 Neb. 268, 328 N.W.2d 764 (1983) (former director's salary was fixed by statute, thus precluding need for judicial action on part of board of county commissioners); *McCollough v. County of Douglas*, 150 Neb. 389, 34 N.W.2d 654 (1948) (rate of compensation for deputy clerk of district court fixed by statute required only ministerial action, therefore plaintiff not required to file claim with county

clerk).

Concluding that the contract there in question required the county to decide factual questions based on evidence both as to whether the contract had in fact been breached and, if so, as to the amount of damages proximately caused, we held that Zeller's petition failed to state a cause of action because it did not recite that the claim was first presented to the county. *Zeller Sand & Gravel, supra.*

The defendant counties here cite two cases seemingly similar to the case now before us, *Jackson, supra*, and *Thompson v. City of Omaha*, 235 Neb. 346, 455 N.W.2d 538 (1990), in which public employees sued to recover additional compensation. In both cases, the employees' petitions were dismissed for failing to comply with the appropriate county or city claims statute.

But the facts of those cases are inapposite to those now before us. In *Jackson*, the employees contended that they were entitled to recover compensation for a 15-minute period in which they were required to report early for the purpose of conferring with workers on the preceding shift, while in *Thompson*, city employees sought unpaid overtime wages earned but uncompensated for a period of 5 years within the filing date of the petition. Prior to their petition before the district court, the city council in *Thompson* had awarded the employees compensation for overtime earned during the 18-month period immediately preceding the filing of the claim. Because of the nature of the claims in both *Jackson* and *Thompson*, both of which would require factual determinations to be made, resolution was best suited to the city council or board of county commissioners.

In the instant case, however, Hoiengs asks for an interpretation of statutory language relating to the amount counties are required to contribute to the employer account of each county employee. There are no questions of fact which would require a county's determination based upon the evidence presented which would place the matter within the purview of § 23-135; the statute therefore does not apply.

## 2. CLAIMED DEFECT OR MISJOINDER OF PARTIES

The next question is whether there is, as the defendants

claim, a defect or misjoinder of parties.

### (a) Failure to Name Retirement Board

While not raised by the parties, first there is the matter of Hoiengs' failure to name the retirement board as a party defendant. It is clear that the declaratory judgment statutes are applicable only where all interested persons are made parties to the proceedings. *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 505 N.W.2d 654 (1993); *Krohn v. Gardner*, 238 Neb. 460, 471 N.W.2d 391 (1991); *Koenig v. Southeast Community College*, 231 Neb. 923, 438 N.W.2d 791 (1989); *Omaha Pub. Power Dist. v. Nuclear Elec. Ins. Ltd.*, 229 Neb. 740, 428 N.W.2d 895 (1988); § 25-21,159. Therefore, joinder of all necessary parties defendant is required. *Haynes v. Anderson*, 163 Neb. 50, 77 N.W.2d 674 (1956).

An indispensable or necessary party to a suit is one who has an interest in the controversy to an extent that such party's absence from the proceedings prevents a court from making a final determination concerning the controversy without affecting such party's interest. See, *Concerned Citizens, supra*; *Shepoka v. Knopik*, 197 Neb. 651, 250 N.W.2d 619 (1977); *City of Omaha v. Danner*, 186 Neb. 701, 185 N.W.2d 869 (1971).

In *Redick v. Peony Park*, 151 Neb. 442, 37 N.W.2d 801 (1949), we held that the presence of necessary parties is a jurisdictional matter and cannot be waived by the parties. It is the duty of the plaintiff to join all persons who have or claim any interest which would be affected by the judgment. To ensure that joinder, the declaratory judgment statutes provide that no declaration shall prejudice the rights of persons not parties to the proceedings and likewise provide that the court may refuse to render a declaratory judgment when to do so would not terminate the uncertainty or controversy giving rise to the proceeding. §§ 25-21,154 and 25-21,159.

The retirement board is responsible for administering the system, § 23-2305, and, among other things, for providing for an equitable allocation of expenses among the various entities it administers. Neb. Rev. Stat. § 84-1503 (Supp. 1991).

However, while the retirement board is responsible for administering the system's funds, its duties do not require it to

establish a county's contributions or to enforce the amount thereof; those matters are set by statute. See § 23-2310. Consequently, the retirement board is not an indispensable party. However, inasmuch as it is not a party, nothing decided in this suit will bind it. See *Fowler v. Brown*, 51 Neb. 414, 71 N.W. 54 (1897) (personal judgment against one not served with process and not appearing in action is void). See, also, *Weiner v. State*, 179 Neb. 297, 137 N.W.2d 852 (1965).

### (b) Naming of System and Counties

The propriety of naming the system and the counties as defendants depends not only on whether both have an interest in the subject matter of this case, but whether each also has an interest of such a nature that a final decree cannot be entered without affecting its rights or leaving the controversy in such condition that its final determination may be wholly inconsistent with equity and good conscience as related to some legal right. *Professional Firefighters of Omaha v. City of Omaha*, 243 Neb. 166, 498 N.W.2d 325 (1993). See, also, *Shepoka, supra.*

Under the provisions of the retirement act, the system, as noted in part VI(1)(a), transacts all business and holds all cash and other property. Any benefits to which county employees would be entitled pursuant to increased contributions would come out of the fund. Moreover, the retirement act provides that the system may be sued. § 23-2314. Therefore, any judicially determined right to increased contributions would be binding upon the system. See *Crain v. Mo. State Employees' Retirement System*, 613 S.W.2d 912 (Mo. App. 1981).

As Hoiengs challenges the amount of contributions being made by the counties into the employee retirement accounts, the counties are also interested parties. The obvious result, should Hoiengs be successful in this action, is that county employees would receive additional monies through county contributions. Therefore, the counties' interest is apparent because they pay the contributions from their own funds, and the result of this case will determine the amount of those contributions. See § 23-2307.

It therefore was not inappropriate for Hoiengs to name the

counties and the system as parties defendant.

### 3. CLAIMED MISJOINDER OF CAUSES

The defendants next take the position that there has been a misjoinder of causes of action, in part because of the different procedures for bringing claims against the county and the system. However, as we came to understand through the analysis in subparts (b)(i) and (ii) of this part VI, the statutes on which the defendants rely in making this contention do not apply.

A cause of action consists of the fact or facts which give one a right to judicial relief against another. *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993); *Widga v. Sandell*, 236 Neb. 798, 464 N.W.2d 155 (1991). Whether more than one cause of action is stated depends mainly upon whether more than one primary right or subject of controversy is presented and also upon whether recovery on one ground would bar recovery on the other, whether the same evidence would support the different counts, and whether separate actions could be maintained for separate relief. *Sickler v. City of Broken Bow*, 143 Neb. 542, 10 N.W.2d 462 (1943). Here, Hoiengs has alleged one cause of action relating to a contract arising out of a statute. See Neb. Rev. Stat. § 25-702 (Reissue 1989). See, also, *Stahmer v. Marsh*, 202 Neb. 450, 276 N.W.2d 87 (1979). Thus, there is no misjoinder of causes.

### 4. CLAIMED FAILURE TO STATE CAUSE OF ACTION

The question as to whether Hoiengs has stated a cause of action has two aspects: (a) whether he did so on his own individual behalf and (b) whether he did so on behalf of a class.

### (a) On Individual Behalf

The defendants' contention that Hoiengs has not stated a cause of action on his own individual behalf in turn rests upon three arguments: (i) that the nature of a declaratory judgment action is such that it should not be entertained where there already exist special statutory procedures for making claims against them; (ii) that monetary damages are not available in a declaratory judgment action; and (iii) that in any event, declaratory relief would not end the controversy.

### (i) Nature of Declaratory Judgment

Having already determined in subpart (1)(b) of this part VI that the claims procedures do not apply, we need only note that we have previously held that a declaratory judgment action is an appropriate method to obtain judicial construction of a statute. *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 478 N.W.2d 270 (1992); *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991); *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284 (1989); § 25-21,150. Notwithstanding that the retirement act gives rise to contractual rights, it is the interpretation of the act which is the focus of this action. Indeed, we have previously entertained declaratory judgment actions to determine the pension rights of public employees. For example, in *Hooper v. City of Lincoln*, 183 Neb. 591, 163 N.W.2d 117 (1968), a fireman sought declaratory relief to determine his pension rights. We determined that under the facts of the case, declaratory judgment was a proper procedure despite the city's argument that a fireman claiming disability benefits under the pension act must first file a claim against the city pursuant to statute and then, if dissatisfied with its disposition, appeal by petition in error to the district court. See, *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982); *Retired City Civ. Emp. Club of Omaha v. City of Omaha Emp. Ret. Sys.*, 199 Neb. 507, 260 N.W.2d 472 (1977).

### (ii) Monetary Damages

It is true that Hoiengs asks for more than a declaration as to the contributions the retirement act requires of the counties, he also asks that the counties be required to pay the system the difference between the contributions they have made and those they should have made. The fact is, however, that a court may, among other things, grant a money judgment as consequential relief in a declaratory judgment action. *Heimbouch v. Victorio Ins. Serv., Inc.*, 220 Neb. 279, 369 N.W.2d 620 (1985) (court in declaratory judgment action may not only construe contract, but is authorized to enter judgment for amount due thereunder); *Dixon v. O'Connor*, 180 Neb. 427, 143 N.W.2d

364 (1966) (where in declaratory judgment action court found relationship of parties to be that of landlord and tenant, granting of accounting was within equitable jurisdiction of court).

Thus, the fact that Hoiengs asks for relief which may include a money judgment does not mean he has failed to state a cause of action for declaratory relief.

### (iii) Continuation of Controversy

Lastly, in this regard, the defendants assert that declaratory relief is not appropriate because the "district court would be involved in the ongoing administration of the [system] for a very long time as members of the class were identified, claims heard and determined on a case by case basis, and arrangements for payments made." Brief for appellee Seward County at 9-10.

In addition to the requirement that a justiciable issue must be presented for declaratory relief, a court should enter a declaratory judgment only where such judgment would terminate or resolve the controversy between the parties. *Omaha Pub. Power Dist. v. Nuclear Elec. Ins. Ltd.*, 229 Neb. 740, 428 N.W.2d 895 (1988); *VisionQuest, Inc. v. State*, 222 Neb. 228, 383 N.W.2d 22 (1986); *Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985); § 25-21,154. The court must make a full and complete declaration, and where it will be necessary to bring another action or proceeding to settle the controversy, declaratory judgment will not be granted. *Graham v. Beauchamp*, 154 Neb. 889, 50 N.W.2d 104 (1951); *Dobson v. Ocean Accident & Guarantee Corporation*, 124 Neb. 652, 247 N.W. 789 (1933).

It is true, as first detailed in part III, that a county employee is not entitled to benefits under the retirement act until he or she has retired after attaining the age of 55 or is disabled, or until after the employee reaches the age of 65 if he or she is terminated; only then are the county contributions which have been made to the employer account paid to the employee. Nonetheless, not only is the amount of contributions to be made by the counties set by statute, the statutes define the persons on whose behalf the contributions are to be made,

§ 23-2306, and set forth as well the amount of employee compensation which forms the basis for contributions, § 23-2330. Thus, the situation is not like that in *Millard School Dist. v. State Department of Education*, 202 Neb. 707, 277 N.W.2d 71 (1979), in which the claim was primarily one for money. Here, the primary focus is on the construction of the retirement act, the prayer for money being only incidental to the interpretation of the act.

Moreover, the fact that the court may need to grant further relief after entering a declaratory judgment does not make a case unsuitable for declaratory relief. As we said in *First Nat. Bank v. Omaha Nat. Bank*, 191 Neb. 249, 214 N.W.2d 483 (1974), the court which has entered a judgment declaring the rights of the parties under contract has the power to retain jurisdiction and grant further relief, which contemplates necessary supervision of such contracts and entry of supplemental judgments and orders from time to time.

The declaratory judgment statutes are remedial; their purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and they are to be liberally construed and administered. § 25-21,160. See *Berigan Bros. v. Growers Cattle Credit Corp.*, 182 Neb. 656, 156 N.W.2d 794 (1968).

Hoiengs has therefore pled a declaratory judgment action on his own behalf.

### (b) On Behalf of Class

The next question is whether Hoiengs has successfully pled an action on behalf of a class consisting of "current and past" participants in the system.

Class actions are authorized under Neb. Rev. Stat. § 25-319 (Reissue 1989), which provides: "When the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

While "or," when used properly, is disjunctive and "and" conjunctive, the words are so frequently interchanged that in construing a civil statute, "or" may be read as "and" where a

strict reading would lead to an absurd or unreasonable result and defeat the intent of the statute. See, *Rapid Film Service, Inc. v. Bee Line Motor Freight*, 181 Neb. 1, 146 N.W.2d 563 (1966); *Richter v. City of Lincoln*, 136 Neb. 289, 285 N.W. 593 (1939); *Carlsen v. State*, 127 Neb. 11, 254 N.W. 744 (1934).

Surely it would be absurd to say that two persons litigating a question of common interest should, for that reason alone, be afforded class action treatment; it would be equally absurd to say that 50,000 persons litigating questions having no common or general interest should be so treated. Thus, the second "or" in the phrase "common or general interest of many persons, *or* when the parties are very numerous" requires that both of the designated conditions exist. That is, in order to justify class status treatment, there must exist both a question of common or general interest *and* numerous parties so as to make it impracticable to bring all the parties before the court. See *Berkshire & Andersen v. Douglas County Board of Equalization*, 200 Neb. 113, 262 N.W.2d 449 (1978).

There is no mechanical test for determining whether in a particular case the class is so numerous that the requirement of numerosity has been satisfied. *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34 (4th Cir. 1978). Nonetheless, here Hoiengs' allegation that 9,000 employees have been affected by the statute meets the numerosity requirement; the impracticality of joining such a large number of parties is obvious.

However, the question as to whether the commonality requirement has been met is a more complicated matter. In *Archer v. Musick*, 147 Neb. 344, 23 N.W.2d 323 (1946), *opinion vacated on reh'g* 147 Neb. 1018, 25 N.W.2d 908 (1947), we stated that an action may not be maintained as a class action by a plaintiff on behalf of himself or herself and others unless he or she has the power as a member of the class to satisfy a judgment on behalf of all members of the class.

The defendants urge that as Hoiengs could not satisfy a judgment, class action status is inappropriate. In *State ex rel. Sampson v. Kenny*, 185 Neb. 230, 175 N.W.2d 5 (1970), the relators on behalf of all taxpayers similarly situated asked that the court make provisions for paying claims for the refund of taxes illegally collected and disbursed to all taxpayers having

the right to file such claim. We determined that the action could not be brought as a class action because in such a case the " ' "judgment must not only be for each according to the amount due him, but must depend upon whether each as an individual paid voluntarily or involuntarily." ' " *Id*. at 232, 175 N.W.2d at 6. In addition, we pointed to the procedural difficulties and confusion inherent in attempting to judicially control in a class action the ministerial actions of a county treasurer where, by statute, such a refund must be individually determined. See, *Boersma v. Karnes*, 227 Neb. 329, 417 N.W.2d 341 (1988), *appeal dismissed* 488 U.S. 801, 109 S. Ct. 29, 102 L. Ed. 2d 9; *Gates v. Howell*, 211 Neb. 85, 317 N.W.2d 772 (1982); *Riha Farms, Inc. v. County of Sarpy*, 212 Neb. 385, 322 N.W.2d 797 (1982); *Hansen v. County of Lincoln*, 188 Neb. 461, 197 N.W.2d 651 (1972); *State ex rel. Sampson, supra*; Neb. Rev. Stat. § 77-2795 (Reissue 1990).

What distinguishes *State ex rel. Sampson* and similar cases from the case now before us is our reference to the "peculiarly individual requirements of the refund statute" and the policy of the Legislature in normally not refunding taxes paid under a mistake of law unless such request is made pursuant to statute. *State ex rel. Sampson*, 185 Neb. at 233, 175 N.W.2d at 7.

In contrast, observing that class actions rendered unnecessary the proliferation of litigation of individual suits, we permitted a city policeman on behalf of himself and all city policemen and firemen to recover an amount erroneously deducted for pension purposes from their salaries. *Gant v. City of Lincoln*, 193 Neb. 108, 225 N.W.2d 549 (1975). We held that where 400 parties would be entitled to share in the funds, where the amount due each was small, and where questions of law and fact were common to all and predominated over individual interests, the plaintiff, in representing his own interest, necessarily would represent interests of all members of the class.

Unlike cases where, by the very nature of the facts, each of the claimants stood or fell on facts applicable only to that claimant, here, there is at this point nothing unique about Hoiengs' legal claim from other members of the class. All are concerned with the manner in which the retirement act has been

applied to the employees' retirement accounts. The case will turn on the interpretation of the statutes governing county contributions. So far as now appears, the effect on Hoiengs and the others will, in that regard, be basically the same, an increase in the amount of contributions to their employer accounts or no change to their accounts.

Further, although in the instant case the amount of recovery would be different for each employee, judgment would not require varying proof as to the right of each employee to participate in the fund. *Daar v. Yellow Cab Co.*, 67 Cal. 2d 695, 433 P.2d 732, 63 Cal. Rptr. 724 (1967) (percent of rate of overcharge to each member of class was identical and uniform and known to defendant and would not require each individual plaintiff to appear); *Fanucchi v. Coberly-West Co.*, 151 Cal. App. 2d 72, 311 P.2d 33 (1957) (action by 18 cotton growers on behalf of themselves and others similarly situated against ginning company to recover for portion of seed derived from cotton delivered to defendants could be properly maintained as class action where facts necessary to establish liability on part of defendant was exactly the same despite different pro rata recovery by each grower; while recovery of grower would have to correspond with weight of cotton delivered, that is matter of record and amount of each grower's recovery could easily be ascertained by mere mathematical computation).

We thus conclude that Hoiengs has stated a cause of action on behalf of a class. Whether the evidence will develop conflicts between Hoiengs and the others he seeks to represent cannot, of course, be known at this time.

The test of common interest to maintain a class action is whether all the members of the purported class desire the same outcome of the action that their representative desires. *Browne v. Milwaukee Bd. of School Directors*, 69 Wis. 2d 169, 230 N.W.2d 704 (1975). Persons having an interest adverse to those of parties purported to be represented cannot maintain a representative or class suit on behalf of the latter. *Sarratt v. Lincoln Benefit Life Co.*, 212 Neb. 436, 323 N.W.2d 81 (1982); *Evans v. Metropolitan Utilities Dist.*, 185 Neb. 464, 176 N.W.2d 679 (1970). In determining the ability of a plaintiff to represent a class, it must appear that the relief sought is

beneficial to the class members and that the plaintiff's interests are consonant with those of the other members of the class. *Luitweiler et al. v. Northchester Corp.*, 456 Pa. 530, 319 A.2d 899 (1974).

Citing *Blankenship v. Omaha P. P. Dist.*, 195 Neb. 170, 237 N.W.2d 86 (1976), the defendants argue that in this case, employees working in one county but living in another would not want the county in which they lived to contribute the additional amounts to others' retirement funds because of the probable resulting increase in taxes that would be required to pay the additional contributions.

In *Blankenship*, a customer of a utility sought a refund of certain allegedly unlawful late charges on his own behalf and on behalf of those other customers or ratepayers of the utility who had or would in the future be required to pay said charges. We reasoned that if the plaintiff were successful, the utility would have to raise approximately $2,400,000 to make the refunds, and those customers who paid the penalty charge only once or rarely would likely be damaged economically in the long run by the increased rates which would have to be charged to pay the judgment. Thus, we held that the would-be representative could not maintain a class action.

In an earlier case, *Evans, supra*, a ratepayer of a utility brought an action on his own behalf and that of all other ratepayers to compel the return to the district of certain statutory payments to the city. Concluding that not all ratepayers would be benefited because many of them were also taxpayers of the city which would have to raise taxes to pay any judgment, we held that a class action was inappropriate. See, also, *In re 1983-84 County Tax Levy*, 220 Neb. 897, 374 N.W.2d 235 (1985) (residents and taxpayers challenging constitutionality of statute prescribing procedure under which tax levied by one district for providing schools to another district could not maintain class action in view of record showing potentiality of conflict of interest among members of class owning property located in both districts); *Kosowski v. City Betterment Corp.*, 197 Neb. 402, 249 N.W.2d 481 (1977) (where class included members who would stand to suffer if suit were successful in enjoining disbursement of funds).

The general rule extracted from these cases is that if any party included in the claimed class stands to suffer an economic loss as the result of his or her inclusion, the party initiating the class action will have an interest adverse to those of the parties he or she purports to represent, and, therefore, it can be said the action is not brought for the benefit of all members of the class. See *Blankenship, supra.*

Thus, where the record demonstrates potentially conflicting interests within the class, it is appropriate to grant a motion for summary judgment as to the class aspect of the case. *Sarratt, supra*; *Kosowski, supra.* We said in *Blankenship*: "All the court need determine in granting a motion for summary judgment denying the plaintiff the right to proceed in a class action is that the undisputed facts demonstrate the potentiality of conflict of interests between the represented, or some of them, and the interests which the plaintiff asserts." 195 Neb. at 177, 237 N.W.2d at 90.

However, at this point, the asserted conflict of interest between Hoiengs and the members of the claimed class is highly speculative. We have only the argument of the defendants that the class includes members whose taxes would be raised without receiving an offsetting benefit. While we have said that a petition for class status may be challenged by demurrer, *Twin Loups Reclamation & Irr. District v. Blessing*, 202 Neb. 513, 276 N.W.2d 185 (1979), it would be unjust under the allegations in the present petition to presume the presence of a conflict in the absence of evidentiary support. See *Ross v. City of Geneva*, 43 Ill. App. 3d 976, 357 N.E.2d 829 (1976), *aff'd* 71 Ill. 2d 27, 373 N.E.2d 1342 (1978). The determination of whether the suit is maintainable as a class action usually should be predicated on more information than the petition itself. See, *Beckstead v. Superior Court*, 21 Cal. App. 3d 780, 98 Cal. Rptr. 779 (1971); *Lucas v. Pioneer, Inc.*, 256 N.W.2d 167 (Iowa 1977); *Riley v. New Rapids Carpet Center*, 61 N.J. 218, 294 A.2d 7 (1972); *Hicks v. Milwaukee County*, 71 Wis. 2d 401, 238 N.W.2d 509 (1976) (whether class action may be maintained will seldom be answered on the face of the complaint, and demurrer or its equivalent will seldom be an appropriate way to object to a class action).

There remains a further question none of the parties have raised. What members of the class are to be bound by the judgment entered herein?

Although our statute is silent on this issue, we acknowledge that the procedure in a class action must conform to the requirements of due process and fairly ensure the protection of absent parties who are to be bound. *Hansberry v. Lee*, 311 U.S. 32, 61 S. Ct. 115, 85 L. Ed. 22 (1940); *Horst v. Guy*, 211 N.W.2d 723 (N.D. 1973). Thus, in particular cases there may be a due process requirement of notice to absent class members even though there is no express statutory requirement. See, *Eastham v. Public Employees' Retirement Ass'n Bd.*, 89 N.M. 399, 553 P.2d 679 (1976); *Graham v. Bd. of Supervisors*, 25 A.D.2d 250, 269 N.Y.S.2d 477 (1966), *appeal dismissed* 17 N.Y.2d 866, 218 N.E.2d 332, 271 N.Y.S.2d 295.

We are not unmindful that in *Gant v. City of Lincoln*, 193 Neb. 108, 225 N.W.2d 549 (1975), we dispensed with notice, stating that notice was not required in all representative actions. However, therein, it appeared that as the plaintiff had won, there was no way in which the absent class members could be prejudiced by the judgment. Here, we cannot know the ultimate outcome.

One of the primary purposes of notice is so that one may ask to be excluded in order to avoid being bound by a class action judgment and to permit those excluded to litigate their own claims. *Sarasota Oil Co. v. Greyhound Leasing & Financial Corp.*, 483 F.2d 450 (10th Cir. 1973). Providing notice of an opportunity to opt out of the class fulfills due process by safeguarding individual interests and by allowing individuals to avoid being bound by a classwide judgment that otherwise would preclude them from litigating their claims separately. *Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782 (E.D. La. 1977), *appeal dismissed* 579 F.2d 642 (5th Cir. 1978); *In re Four Seasons Securities Laws Litigation*, 502 F.2d 834 (10th Cir. 1974), *cert. denied* 419 U.S. 1034, 95 S. Ct. 516, 42 L. Ed. 2d 309; *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977); *Redhail v. Zablocki*, 418 F. Supp. 1061 (E.D. Wis. 1976), *aff'd* 434 U.S. 374, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978).

We are persuaded that the due process rights afforded by Neb. Const. art. I, § 3, preclude binding any member of the claimed class who does not receive notice of this suit to any judgment rendered herein. In like vein, one receiving notice is entitled to exercise his or her due process right to opt out of the class.

## VII. JUDGMENT

For the foregoing reasons, we, as first stated in part I, reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WHITE, J., participating on briefs.