VISIONQUEST, INC., APPELLANT, V. STATE OF NEBRASKA, DEPARTMENT OF PUBLIC WELFARE, ET AL., APPELLEES.
383 N.W.2d 22

Filed March 14, 1986.   No. 84-541.

Patrick W. Healey of Healey, Brown, Wieland, Kluender, Atwood & Jacobs, and Mark M. Contento, for appellant.

Patrick T. O'Brien, Deputy Attorney General, and Royce N. Harper, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is an appeal from the district court for Lancaster County, Nebraska. The district court dismissed the petition of plaintiff-appellant, VisionQuest, Inc. (hereinafter Vision-Quest), against defendants-appellees, State of Nebraska; Department of Public Welfare, State of Nebraska; and the director of the Department of Public Welfare (hereinafter defendants). The court based its decision on VisionQuest's failure to comply with certain statutory procedures in perfecting its appeal to the district court. VisionQuest timely appealed to this court, contending that the district court erred (1) in dismissing VisionQuest's action, based upon a pleading filed by the defendants and captioned "Motion to Dismiss"; (2) in failing to grant relief by way of mandamus and declaratory judgment; (3) in failing to hold that Neb. Rev. Stat. ch. 24, art. 3 (Reissue 1979 & Cum. Supp. 1984), as applied to this action, set forth a procedure complete in itself with which VisionQuest had fully complied; and (4) in holding that Neb. Rev. Stat. § 77-2407 (Reissue 1981) is applicable to this action. For the reasons hereinafter stated we affirm.

The record in this case consists entirely of a transcript containing the pleadings of the parties and the orders of the trial court filed in the district court, and a supplemental transcript consisting of "Copy of Transcript from Department of Administrative Services, State of Nebraska . . . ." There is no bill of exceptions, since no evidence was taken at any stage of these proceedings.

The transcript from the Department of Administrative Services (hereinafter DAS) was certified by the director of DAS

on March 30, 1982, and filed in the district court on April 9, 1982. The transcript consists of five letters. The first is a letter of December 10, 1981, to the then director of DAS from VisionQuest's counsel, stating VisionQuest had rendered a bill for services to the Department of Public Welfare (hereinafter Department) for $38,940.48 and that the Department had denied payment in full, although it had paid $12,224 (sic), which was applied by VisionQuest to the bill. The letter further stated:

It appears at this point that payment has been denied and my clients wish to proceed with suit to recover the sums they believe due to them. However, it appears under section 22 of Article V of the Constitution and sections 24-319 and following of the Nebraska Statutes, that it is necessary first to present the claim to you, as Director of Administrative Services, and proceed with suit if the claim is in whole or in part rejected or disallowed.

We are therefore presenting to you at this time our client's demand for payment of the sums due.

The letter further stated: "There is of course considerably more evidentiary matter and legal material, but this letter and the enclosures would appear to be sufficient to acquaint you with the nature of the claim and the issues involve[d]."

Attached to this letter of December 10, 1981, and included by reference, were 10 letters from and to various representatives of, and attorneys for, various parties setting forth their various positions. These 10 letters were written during the time from March 13 to November 5, 1981.

The other primary four letters made a part of the DAS transcript consisted of a letter from DAS to VisionQuest's counsel acknowledging receipt of the December 10, 1981, letter; a letter from DAS to the Attorney General of the State of Nebraska requesting legal advice with regard to the VisionQuest claim; a letter from the Attorney General's office to DAS recommending the claim be denied; and a letter of January 25, 1982, to VisionQuest's counsel from the director of DAS denying the claim.

As stated above, the transcript also sets out the pleadings in the district court. VisionQuest's petition was filed February 24,

1982, and the facts alleged therein show the following.

VisionQuest is a corporation organized under the laws of the State of Arizona, which provides educational and related services to delinquent, disturbed, and handicapped children. VisionQuest does business in Arizona, New Mexico, and elsewhere as authorized by law. At some time prior to 1981, the Department contracted with VisionQuest to provide services for two Nebraska residents, P.J.L., born October 9, 1960, and R.F., born July 26, 1964. Both were placed at a VisionQuest facility, apparently in Arizona. P.J.L. was placed with VisionQuest on July 1, 1980, and that placement apparently continued at least to February 24, 1982, which was the date of the filing of VisionQuest's petition. In the present posture of the case, we do not know when this placement was terminated. In the case of R.F., placement began on June 11, 1980, and terminated on October 15, 1981. The whereabouts of either P.J.L. or R.F. at any time after the filing of this petition is not shown in the record.

In February of 1981 the Department requested VisionQuest to return P.J.L. and R.F. to Nebraska for further placement and treatment. The parents of R.F. objected to the removal of their child from the VisionQuest facility, and their attorney sent a letter dated March 13, 1981, to the administrative director for VisionQuest, directing VisionQuest "not to release, transfer, or other [sic] deliver [R.F.] to the custody of the Department of Public Welfare or other agency of the State of Nebraska until the State has discharged its obligations under the applicable Federal law." The "applicable Federal law" to which this letter refers is the federal Education of the Handicapped Act, 20 U.S.C. §§ 1401 et seq. (1982) (hereinafter EHA). The act is essentially a funding statute through which the federal government provides financial assistance to the states for the education of handicapped children. A state, however, is not entitled to receive these funds unless it fulfills certain prerequisites. Among those prerequisites is the requirement a state or agency must give notice and a "due process" hearing before a child may be removed from his then current placement. See § 1415(a)-(e). In addition, the parents of P.J.L., through counsel, sent a letter dated April 13, 1981, to the then

director of the Department specifically requesting a due process hearing concerning P.J.L.'s proposed change of placement.

The Department's position concerning the issue of placement is stated in a letter from the Department's counsel to VisionQuest's counsel. The letter, dated November 5, 1981, states in part:

[R.F.] and [P.J.L.] are wards of the State of Nebraska, that is to say, the Department of Public Welfare is the legal guardian of these minors pursuant to Sections 43-209 and 43-905, R.R.S. 1943. These children were placed in VisionQuest by the Department as legal guardian, under the provisions of the Interstate Compact on the Placement of Children (Section 43-1101, R.R.S. 1943). These placements were not made under the provisions of the Federal Education of the Handicapped Act as continually cited by VisionQuest and their counsel. If you have reviewed previous correspondence, you know that it has been and continues to be our position that the Education of the Handicapped Act does not apply to this situation since the Department is not an educational institution as contemplated by the Act.

Effective April 1, 1981, it became the Department's position that it would no longer render payment to VisionQuest for the care of P.J.L. and R.F. because VisionQuest had detained these individuals against the express wishes of the Department and refused to return the minors to Nebraska. Further letters show that the Department later changed its position, and on October 15, 1981, sent a check in the amount of $10,224 to VisionQuest for services rendered to P.J.L. and R.F. for the period April 1, 1981, to September 30, 1981. Accompanying this check was a letter from counsel for the Department stating that the payment was based on an amount that would have been incurred if P.J.L. and R.F. had been returned to Nebraska effective April 1, 1981, and like services had been rendered to the children in Nebraska.

VisionQuest appealed the DAS letter denial of its claim to the Lancaster County District Court. Its petition, filed February 24, 1982, set out two causes of action. The first cause of action prayed for $26,716.48 plus interest for services rendered; for a declaratory judgment and determination of VisionQuest's

rights and the rights and obligations of all the parties as they pertain to §§ 1401 et seq., and "for a declaration and determination of Defendants' continued responsibility to make payment for the services performed by Plaintiff [VisionQuest]"; and for a writ of mandamus directing the Department to pay for VisionQuest's services. The second cause of action was based on quantum meruit for services rendered.

Defendants filed their answer on March 29, 1982. On June 3, 1982, defendants filed a pleading captioned "Motion to Dismiss," alleging that the court lacked jurisdiction of the action because VisionQuest had not perfected its appeal to the district court in compliance with § 77-2407 and Neb. Rev. Stat. §§ 27-1301.01 (Cum. Supp. 1969) and 27-1303 (Reissue 1964). On June 2, 1983, the district court sustained the Department's motion to dismiss and entered an order stating in part: "Plaintiff's petition essentially presents a claim against the State of Nebraska for money. Sections 77-2406 et. seq. are applicable and have not been complied with by the plaintiff in this case."

VisionQuest then filed a "Motion for Judgment Notwithstanding or for New Trial." That motion was overruled on June 5, 1984. In its order the district court stated that it was still of the opinion that VisionQuest's petition essentially presents a claim for money against the State and VisionQuest has failed to comply with the applicable Nebraska law in perfecting its appeal. The following was also part of that order: "The Court has determined that the request for declaratory judgment must also be dismissed for the reason that a declaratory judgment would not terminate this controversy which is essentially a claim against the State of Nebraska for money."

In its first assignment of error, VisionQuest contends that the pleading filed by the defendants, captioned "Motion to Dismiss," is not a permissible pleading in civil practice, citing *Nelson v. Sioux City Boat Club*, 216 Neb. 484, 344 N.W.2d 634 (1984), and *Smick v. Langvardt*, 216 Neb. 778, 345 N.W.2d 830 (1984). While it is true we held in *Nelson* and *Smick, supra,* that there is no pretrial pleading in Nebraska known as a motion to

dismiss, there is an important distinction between those cases and this one. In *Nelson* and *Smick, supra,* the plaintiffs originally brought suit in the district court, and defendants in those cases, rather than filing a demurrer or motion for summary judgment (pleadings authorized by statute and as to which a body of law has settled the legal ramifications), sought to dispose of the cases, without trial, by means of a motion. VisionQuest, on the other hand, in this case, appealed to the district court following what it contends to be an adverse decision from the director of DAS.

It is a generally accepted rule of law that an appellate court has the power to determine whether or not an appeal properly lies. Neb. Ct. R. 7B(1) (rev. 1983) states: "A motion to dismiss for lack of jurisdiction may be filed at any time after an appeal has been docketed." While our review of the Lancaster County District Court rules of practice and procedure (1984) does not show that the district court has a comparable rule, there is no reason such a disposition is not available to the district court, acting as an appellate court, while considering appeals from administrative tribunals as in this case. In *Gesman v. State,* 216 Neb. 126, 342 N.W.2d 196 (1984), we specifically held that a motion to dismiss a similar appeal should have been sustained.

The motion to dismiss filed by the defendants set out that the district court had "no jurisdiction of this action." Defendants' motion was based on VisionQuest's failure to comply with certain statutory provisions in perfecting its appeal to the district court. Where there is a question before a district court, acting as an appellate court, concerning its appellate jurisdiction, the district court is procedurally correct in disposing of the case on the basis of a motion to dismiss.

In its second assignment of error, VisionQuest argues that the district court erred "in failing to grant appellant [VisionQuest] relief by way of mandamus and declaratory judgment, where controversy existed as to what law governed the rights and liabilities of the parties." VisionQuest maintains that relief by way of declaratory judgment is proper in this case because it is "caught in the middle" between the parents of P.J.L. and R.F., who are asserting their rights under EHA, and the Department, which requested return of these individuals pursuant to the

Interstate Compact on Placement of Children. See Neb. Rev. Stat. § 43-1101 (Reissue 1984). While we agree that there is some confusion as to the applicability of EHA and the interstate compact in this case, we hold that the district court was correct in finding that VisionQuest's petition was "essentially a claim . . . for money." P.J.L., R.F., or their parents were not before the district court, nor were any allegations made concerning their rights or status. We agree with the trial court's determination that another reason for not treating VisionQuest's petition as one seeking declaratory relief exists because a declaratory judgment would not terminate the controversy between VisionQuest and the defendants. As stated in *Millard School Dist. v. State Department of Education*, 202 Neb. 707, 711, 277 N.W.2d 71, 73 (1979): "A court may refuse to enter a declaratory judgment where it would not terminate the uncertainty or controversy giving rise to the proceedings."

Further, in *Millard School Dist. v. State Department of Education, supra*, we reiterated that the granting of declaratory relief rests in the discretion of the trial court. See, also, *Blanco v. General Motors Acceptance Corp.*, 180 Neb. 365, 143 N.W.2d 257 (1966). Ordinarily, when a plaintiff asks for declaratory relief, that plaintiff requests a court to direct it in doing or refraining from doing some action that may be at the plaintiff's legal peril. VisionQuest alleges in its petition that it "might be subjected to liability if they caused the removal of the youths from their existing program." There is nothing in the skimpy record before us which supports this allegation. We hold that the district court properly exercised its discretion in refusing to treat VisionQuest's petition as a request for declaratory relief.

VisionQuest's third and fourth assignments may be treated together. VisionQuest contends that the court erred in failing "to hold that Chapter 24, Article 3 of the Nebraska statutes, as applied to this action, set forth a procedure complete in itself with which appellant had fully complied," and in holding that § 77-2407 applied to VisionQuest's action against defendants.

VisionQuest alleges that Neb. Rev. Stat. § 24-319 (Reissue 1979) specifically controls the procedure in this case. That

statute, insofar as applicable to this case, provides: "The several district courts of the judicial districts of the state shall have jurisdiction to hear and determine (1) all claims against the state filed therein which have previously been presented to the Director of Administrative Services, and have been in whole or in part rejected or disallowed." VisionQuest's position is that that section alone controls, and the mere submission and rejection of a claim frees up the claimant to file a petition in the district court and there first present factual evidence. VisionQuest would treat its contractual claim in a fashion identical with the treatment of a tort claim against the state. See Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1981). In the tort claim procedure § 81-8,213 provides that no suit is permitted under that act until the State Claims Board has made a final disposition of the claim, except that if there is no disposition of the claim for 6 months, the claim may be withdrawn and suit begun initially against the state in the district court in the same manner that plaintiffs generally seek tort damages from defendants.

Nebraska law treats contract claims against the state in an entirely different manner. Neb. Const. art. V, § 22, provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." This constitutional provision was discussed in *Gentry v. State*, 174 Neb. 515, 517-18, 118 N.W.2d 643, 645 (1962), where this court stated: "This provision permits the state to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe. This provision of the Constitution is not self-executing. Legislative action is necessary to make it available." The Legislature has provided the manner and where tort claims against the state may be brought and where and in what manner contract claims against the state may be brought.

With regard to contract claims of the type here considered, in § 24-319 the Legislature decreed that the district courts have jurisdiction to hear and determine such claims "which have previously been presented to the Director of Administrative Services, and have been . . . disallowed." The Legislature then provided a specific manner in which claims should be presented

to the Director of Administrative Services. Neb. Rev. Stat. § 77-2406 (Reissue 1981) provides in part that "[a]ll claims . . . upon the treasury of this state, before any warrant shall be drawn for the payment of the same, shall be examined, adjusted and approved by the Department of Administrative Services." Section 77-2407 provides in part as follows:

> In case of the disallowance of any claim, or any part thereof, the party aggrieved by the decision of the director may appeal therefrom to the district court of the county where the capital is located within twenty days after receiving official notice. Such appeal may be taken in the manner provided by law in relation to appeals from county courts to such district courts, and shall be prosecuted to effect as in such cases. The party taking the appeal shall give bond to the State of Nebraska in the sum of two hundred dollars, with sufficient surety to be approved by the clerk of the court to which such appeal may be taken, conditioned to pay all costs which may accrue to the Director of Administrative Services by reason of taking such appeal. No other bond shall be required.

Sections 24-319 (Reissue 1979) and 77-2407 and 77-2408 (Reissue 1981) must be read together and with article VIII, § 9, of the Constitution of the State of Nebraska, which provides:

> Claims upon treasury; adjustment; approval; appeal. The Legislature shall provide by law that all claims upon the treasury shall be examined and adjusted as the Legislature may provide before any warrant for the amount allowed shall be drawn. Any party aggrieved by the action taken on a claim in which he has an interest may appeal to the district court.

The entire constitutional and legislative approach to disposition of contract claims against the state is based on appeals from the actions taken by designated statutory officers, and does not contemplate independent suits in the district court. A claimant must comply with the requirements of § 77-2407 in order to present a valid appeal to the district court from the denial of a contract claim against the state.

In *Scotts Bluff County v. State*, 133 Neb. 508, 276 N.W. 185

(1937), and in *Pickus v. State*, 115 Neb. 869, 215 N.W. 129 (1927), this court held that following the proper procedure was mandatory in order to confer jurisdiction on appeal to the district court. The ultimate dispositive question, then, is whether VisionQuest complied with the requirements of § 77-2407 in filing its petition in the district court.

VisionQuest does not assign as error any action of the trial court in determining that VisionQuest did not follow the procedures set out in § 77-2407. We need not reach defendants' contentions that VisionQuest did not comply with §§ 27-1301.01 and 27-1303, which statutes were repealed by 1972 Neb. Laws, L.B. 1032, § 287, but which statutes were held to be applicable to such appeals in *School Dist. No. 17 and Westside Comm. Schools v. State*, 210 Neb. 762, 316 N.W.2d 767 (1982). That situation has now been clarified by amendment to § 77-2407, effective September 6, 1985.

In the case at bar, VisionQuest, at the minimum, was required to comply with the requirement of § 77-2407 that it appeal "to the district court . . . within twenty days." VisionQuest did not do so. Its February 24, 1982, petition was not timely as an appeal of the DAS denial of January 25, 1982.

Nor did VisionQuest comply with the specific requirement of § 77-2407 that "[t]he party taking the appeal shall give bond to the State of Nebraska in the sum of two hundred dollars . . . ." Such a bond was never posted in this case. In *Gesman v. State*, 216 Neb. 126, 129, 342 N.W.2d 196, 198 (1984), we said: "There is absolutely no evidence of the filing of a *$200* bond. . . . The requirement as to the furnishing of a proper appeal bond is mandatory and essential to confer jurisdiction of the proceedings on the district court." Insofar as VisionQuest's contention in its brief at 17 that "[r]equiring a bond to pursue a claim is an invidious discrimination against those unable to furnish a bond, and is not a valid requirement," we note that the specific requirement of a $200 bond was first enacted by the Legislature in Gen. Laws § 2, p. 202 (1877), and the same requirement in the same amount has been set forth in the various changes in that law up through the time of VisionQuest's appeal to district court.

Insofar as VisionQuest contends that the application of § 77-2407 "would be nonsensical and would deny the rights to a fair hearing," close examination of the record before us does not show that, at any time in the proceedings before DAS, VisionQuest requested a hearing. Nor did VisionQuest at any time before the district court contend that it had been damaged or prejudiced by the lack of a hearing. Had such a contention been made before the district court and the district court's determination that hearing was not necessary been assigned as error in this court, we would be faced with an entirely different situation. Instead, VisionQuest has presented a case where we must assume that the presentation it made to DAS constituted all the presentation it desired to make. The issue of the propriety of DAS's making a final denial of a claim without an evidentiary hearing is not before us.

The action of the district court in sustaining defendants' motion to dismiss VisionQuest's petition was correct and is affirmed.

AFFIRMED.