A02A1775. BOARD OF REGENTS OF THE UNIVERSITY
SYSTEM OF GEORGIA et al. v. RUX et al.
(580 SE2d 559)

JOHNSON, Presiding Judge.

This case involves the implementation of a pay raise to academic faculty members of the University System of Georgia. Faculty members of two of the University System's colleges claim that the directives which the Board of Regents gave the institutions for calculating pay raises resulted in some faculty members being treated unfairly and not receiving the full pay to which they were entitled under their contracts, in violation of the equal protection clauses of the federal and state constitutions. The trial court granted class certification to the faculty members who filed suit against the Board of Regents, granted the faculty members' motion for summary judgment as to their claim that the Board of Regents breached their employment contracts by violating their right to equal protection of the law, and denied the Board of Regents' motion for summary judgment on the same issue.[1] The Board of Regents appeals. We affirm the judgment of the trial court.

The relevant, undisputed facts are as follows. Julia Rux, Emily Whaley, Dewey Weiss Kramer, Robert Dubay, and Patricia Lord are

---

[30] See *Frady*, supra.

[1] The trial court also granted the Board of Regents' motion to dismiss three of the counts of the faculty members' four-count complaint. That ruling is not at issue on appeal.

ten-month academic faculty members at two institutions of the University System of Georgia (collectively referred to as the "faculty members").

In 1998, the Georgia legislature approved a six percent funding increase to the Board of Regents for the purpose of paying salary increases to University System faculty members. The pay raises were to become effective September 1, 1998.

At about the same time, the Board of Regents directed each member institution to switch from a quarter system to a semester system, beginning with the 1998-1999 academic year. Under the quarter system, ten-month faculty members did not begin work until September. Under the new semester system, which began in 1998, ten-month faculty members began work in August.

To accommodate the new academic calendar under the semester system, the Board of Regents directed its institutions to pay ten-month faculty members on a ten-month pay schedule in ten equal installments. Specifically, ten-month faculty members would receive one-tenth of their salary on the last workday of each of the ten months (August through May) of their contracts. The payments were to be equal, though the number of workdays per month was not. For instance, ten-month faculty members typically do not work a complete month in August, December, or May.

In order to implement the pay increase, the Board of Regents authorized each of its thirty-two member institutions to choose either of two methods for calculating the August 31, 1998 paychecks for the faculty members at their particular institutions. Institutions could either: (1) withhold one-tenth of the 1998-1999 academic year salary increase from the August paycheck, paying faculty members that month at the 1997-1998 rate, and then pay each of the remaining nine paychecks at one-tenth of their 1998-1999 academic year salary rate; or (2) pro-rate the amount of the August 1998 check according to the number of days each faculty member actually worked during the month of August, paying the pre-raise salary only for those days actually worked, and paying all other days of the academic year at the new rate.

Under the first option, which is the one imposed upon the plaintiffs in this case, faculty members were denied the salary increase for a full one-tenth of their academic year contract when, according to the plaintiffs, August actually represented only about one-eighteenth of their academic year obligation. The result of this option was that the faculty members were in essence paid for days in August and some days in September 1998 at their 1997-1998 academic year salary rate.

Under the second option, which several other colleges chose, ten-month faculty members were paid using the pro-rated formula so

that they received the maximum percentage of the 1998-1999 pay increase. This way, the first paycheck of the 1998-1999 academic year reflected the lower (1997-1998) pay rate for only the days in August actually worked, and all the September workdays were paid at the higher (1998-1999) rate.

The faculty members who brought this action challenge the Board of Regents' administrative decision authorizing, and in fact encouraging, what they allege is a discriminatory classification distinguishing between similarly situated faculty members in the calculation of statutorily mandated pay raises.

1. The Board of Regents contends that the trial court erred in ruling that it breached the faculty members' employment agreements by violating the equal protection clauses of the United States and Georgia Constitutions.[2] The Board of Regents urges that there is a rational basis for permitting the University System institutions to decide individually which calculation method to use. Specifically, the Board of Regents states that individual decisions were warranted because the institutions have diverse sizes, locations, and budgets, different technical and financial capabilities, and various payroll systems.

The constitutional guaranty of equal protection requires that all persons shall be treated alike under like circumstances and conditions.[3] However, it does not prevent a reasonable classification related to the purpose of the legislation.[4] A classification, such as the one at issue here, that neither proceeds along suspect lines nor infringes fundamental constitutional rights, must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.[5] Where it is not a fundamental right that is infringed and the person complaining is not a member of a suspect class, the government action is examined under the rational basis test, the least rigorous level of constitutional scrutiny.[6]

All parties to this appeal agree that the equal protection issue raised here should be resolved by applying the rational basis test. The rational basis test requires that the classification at issue be reasonable and not arbitrary, and rest upon some ground of difference

---

[2] Because the protection provided in the equal protection clause of the United States Constitution is co-extensive with that provided in Art. I, Sec. I, Par. II of the Georgia Constitution of 1983, we apply them as one. *Nodvin v. State Bar of Ga.*, 273 Ga. 559-560 (2) (544 SE2d 142) (2001).

[3] *Cherokee County v. Greater Atlanta Homebuilders Assn.*, 255 Ga. App. 764, 767 (1) (566 SE2d 470) (2002).

[4] Id.

[5] See id.

[6] Id.

having a fair and rational relationship to the legislation's objective, so that all similarly situated persons are treated alike.[7] We note that even if legislation is fair on its face, if it is administered unequally, so as to discriminate between persons who are similarly situated, such administration is prohibited by the equal protection clause.[8]

It is clear that the ten-month faculty members who filed this action are similarly situated to ten-month faculty members at the institutions which chose the pro-rata method of calculating paychecks, but that they were treated differently based on which institution employed them. The issue here is whether the Board of Regents' classification of similarly situated ten-month faculty members is a classification that is reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated are treated alike.[9] We find that there is no rational basis for authorizing the difference in treatment of the faculty members.

The purpose of the Board of Regents' action was to implement a statutorily mandated pay raise to University System faculty members effective September 1, 1998. Faculty members at those institutions which selected the first option did not receive the same raise as those at institutions choosing the second option. Although the Board of Regents mentions several factors distinguishing the various institutions, it fails to show, and we do not see, any rational relationship between those differences and the need to make available two different means of calculating paychecks. We note that the institutions which employed the faculty members involved in this case were capable of pro-rating paychecks, as they did use daily rate formulas for computing salaries when faculty members took unpaid sick leave or were terminated early.

The Board of Regents' classification decision contained no standard delineating what sets of circumstances would authorize the use of each method, and instead conferred upon the institutions uncontrolled discretion in deciding which of the two methods to use in calculating pay.[10] There is no substantive difference, for equal protection purposes, in the work the faculty members do, and all faculty members were entitled to the same six percent pay raise. So, the classification was defective in that it drew a line between otherwise identical groups without an objective basis for doing so.

Accordingly, we conclude that the distinction was arbitrarily drawn, and the Board of Regents' directives for implementing the

---

[7] Id.

[8] See *Montgomery v. Suttles*, 191 Ga. 781, 786-787 (13 SE2d 781) (1941).

[9] See *Mansfield v. Pannell*, 261 Ga. 243, 244 (404 SE2d 104) (1991).

[10] See generally *Dorsey v. City of Atlanta*, 216 Ga. 778, 781 (119 SE2d 553) (1961).

pay raise was an unconstitutional denial of equal protection. The trial court did not err in granting summary judgment to the faculty members on this issue.

2. The Board of Regents claims that the trial court erred in granting class certification to the faculty members because sovereign immunity bars a class action in this case. According to the Board of Regents, there is no explicit waiver of sovereign immunity for class actions in contract cases, so sovereign immunity applies.

This argument is without merit because both the 1983 Georgia Constitution and its 1990 amendment provide for the waiver of sovereign immunity as to claims based upon theories of contract liability.[11] This is a claim based on contract liability, and the Board of Regents points to no authority showing that this waiver does not apply here simply because the plaintiffs brought their breach of contract action as a class, rather than an individual, action.

3. The Board of Regents contends that the class should not have been certified because the facts make this an inappropriate case for a class action. Specifically, the Board of Regents complains that the five faculty members in this case have different salaries and separate contracts, and that the two colleges involved have two different school year start dates — August 1 versus August 17.

Under OCGA § 9-11-23, a class action is authorized if the members of the class share a common right and common questions of law or fact predominate over individual questions of law or fact.[12] The character of the right sought to be enforced may be common although the facts may be different as to each member of the alleged class.[13] This court reviews a trial court's certification of a class on an abuse of discretion standard.[14]

In granting the faculty members' motion for class certification, the trial court defined the class as:

[A]ll those persons who were under contract with any and all of the member institutions of the University System of Georgia governed by the Board of Regents as 10-month faculty members (also known as academic faculty members) during the 1998-99 academic year who were paid their first of ten payments under their contracts for the 1998-99 academic year on or about August 31, 1998, at their 1997-98 academic year salary rate without any pro-ration based on

---

[11] *Satilla Community Svc. Bd. v. Satilla Health Svcs.*, 251 Ga. App. 881, 883 (1) (b) (555 SE2d 188) (2001).

[12] *UNUM Life Ins. Co. &c. v. Crutchfield*, 256 Ga. App. 582 (568 SE2d 767) (2002).

[13] Id.

[14] *Jones v. Douglas County*, 262 Ga. 317, 323 (2) (418 SE2d 19) (1992).

the number of workdays during the month of August 1998 such that these 10-month faculty members received payment for workdays in August and September 1998 at their 1997-98 academic year salary rate.

The factors relied upon by the Board of Regents as precluding class certification are relevant to each class member's damage claim. Otherwise, though, the distinctions are not relevant. In this case, there are common factual circumstances and legal issues surrounding the Board of Regents' differing classification of similar faculty members. Minor variations in amount of damages do not destroy the class when legal issues are common.[15] They do not bear on the ultimate liability of the Board of Regents or the class represented by the faculty members.[16] Therefore, the Board of Regents has failed to establish any abuse of discretion by the trial court in certifying the class in this case.[17]

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED MARCH 5, 2003 —
RECONSIDERATION DENIED APRIL 8, 2003 —

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, John B. Ballard, Jr., William W. Banks, Jr., Assistant Attorneys General*, for appellants.

*Kramer & Thomas, Michael E. Kramer, Sanford A. Wallack, John R. Myer*, for appellees.

---

[15] *UNUM Life Ins. Co. &c.*, supra.

[16] Compare *Stevens v. Thomas*, 257 Ga. 645, 650 (2) (361 SE2d 800) (1987).

[17] See generally *Wilson v. Ledbetter*, 260 Ga. 180, 182 (3) (a), (5) (b) (390 SE2d 846) (1990).